552 A.2d 1092

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Oscar Herbert YORK, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 3, 1988.

Filed Jan. 11, 1989.

56

Harry C. Jackson, Lancaster, for appellant.

James J. Karl, Assistant District Attorney, Lancaster, for Com., appellee.

Before CAVANAUGH, TAMILIA and POPOVICH, JJ.

POPOVICH, Judge:

This case involves an appeal from the judgment of sentence for possession with intent to deliver cocaine and hashish, in violation of The Controlled Substance, Drug, Device and Cosmetic Act (35 P.S. Section 780–101 *et seq.*), by the appellant, Oscar Herbert York. We affirm.

The evidence, viewed in a light most favorable to the verdict-winner, reveals that in the middle of August, 1986, State Narcotics Agent Robert M. Roderick received information from one Robert Baldwin "regarding a purchase that he felt he would be able to make" for a pound of cocaine from the appellant.

Baldwin also told Agent Roderick that he had purchased cocaine and hashish from the appellant on "numerous"

occasions. The exact dates on which this occurred were not stated but the agent "had an impression it wasn't that long of a period of time prior to this" August, 1986 contact.

About the 20th of August, 1986, Baldwin informed the agent about the "possibility" that a deal could be set up with the appellant for the purchase of cocaine. At this time, Baldwin also told the agent where the appellant lived, his phone number, his business concerns and the two types of vehicles he owned and operated. This information was verified by the agent through personal observation or a check with the appropriate Commonwealth agency.

On the 26th of August, 1986, Baldwin advised the agent that he had spoken with the appellant about meeting to discuss the sale of drugs "a little after 3:30 p.m." of that day. The agent and his partner (Maryann Will) situated themselves outside the entrance to Baldwin's apartment and witnessed the appellant's arrival at 3:50 p.m. A discussion ensued for ten minutes before the meeting ended. Thereafter, Baldwin spoke with the agent and remarked that the appellant wanted to sell more than a pound of cocaine. He wanted to do a "kilo", that his supplier was in Florida and that it was just a matter of waiting for him to return.

At approximately 4:30 p.m. on the 13th of September, 1986, Baldwin contacted the agent to state that the appellant had called concerning the availability of the cocaine and that he (the appellant) wanted "to do the deal" that day. The agent told Baldwin to "set it up".

Once the agent arrived in Lancaster County from Harrisburg, Baldwin communicated to him that the appellant directed that Baldwin pick up the inositol (a "cutting" additive) since he (Baldwin) "wanted some cut added to it to give it more bulk...."

Once the inositol was purchased, its transfer was to be made at a particular "fast-food" market near Baldwin's residence. A "stake-out" of the market was abandoned when the appellant failed to show. Thinking that something had gone awry, Baldwin phoned the appellant and was

told that there was a "mix-up" as to which market was to be the site of the transfer.

After the site near the appellant's residence had been agreed upon as the meeting place, the agent and his partner witnessed the appellant and Baldwin together, for about a minute, at the stated location. After the two separated, Baldwin told the agent that he had given the "cut" to the appellant and that he (the appellant) would phone Baldwin prior to making delivery. This was to take place around 9:30 p.m.

Baldwin was instructed by the agent to give the police a "sign" that he had communicated with the appellant by lighting a cigarette while standing on his porch. The agent and other officers were situated two to three hundred feet from Baldwin's apartment.

At approximately 9:35 p.m., on the 13th of September, 1986, Baldwin lit a cigarette while on his porch to alert the police of the appellant's impending arrival. At 9:52 or 9:53 p.m., the appellant arrived on the scene and parked his vehicle in the apartment complex. This was followed by the appellant being directed to raise his hands and exit the vehicle. He was "patted down" and removed about two to three feet from his vehicle. The appellant was handcuffed at this time, and Agent Will had her weapon drawn but not aimed at the appellant. Also, the appellant was told that the police had probable cause to believe he was transporting a large quantity of controlled substances and they intended to search his vehicle.

Within a matter of seconds after the appellant was removed from his vehicle, a Detective McGuire discovered two boxes which he felt (and this was later confirmed) contained controlled substances—580 grams of cocaine (a Schedule I drug) in one box; 1,000 grams of hashish (a Schedule II drug) in a second container.

Once the drugs were discovered, Detective McGuire advised the appellant of his *Miranda* rights. Thereafter, the appellant was transported to the police station and re-advised of his *Miranda* rights by a Detective Walters at about

11:00 p.m. During the course of questioning conducted by Detective Walters, the appellant indicated that he had gotten the package of cocaine from "a substantial dealer, that he was ... merely a middleman (and) that he was to collect a fee...." When asked if he would assist the police in the furtherance of their investigation, he declined because of the fear of the repercussions to himself and his family. This exchange ended at 11:15 p.m. By 11:30 p.m., Detective Walters was informed by Detective McGuire that the appellant wished to speak with him.

The appellant indicated that he would be willing to help the police and asked if anything could be done for him in return. The police could make no promises. The appellant proceeded to disclose that a Luis and Martha Lopez from 112 Coral Street in Lancaster had supplied him with the cocaine earlier in the day. He gave an accounting as to the monies which were to be exchanged for the cocaine, and that the hashish was obtained from a Philadelphia man "more or less (as) a chance encounter". With this, the statement came to a conclusion.

After a suppression hearing, in which the appellant challenged the confiscation of the drugs on the ground that the police did not justify their failure to secure a search warrant, a jury trial was held in which the appellant was found guilty of the offenses charged. Post-trial motions were denied, and a sentence of three to ten years for cocaine possession and a consecutive sentence of two to five years imprisonment for the hashish conviction were imposed. This appeal ensued.

As we read the briefs of the parties involved, along with the opinion of the court below, posed for our consideration is the question of whether sufficient information was possessed by the authorities, at the time they stopped the appellant, to justify his arrest, the subsequent search of his vehicle and seizure of the contraband therefrom. We believe there was and look to *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), for direction.

To begin with, in this jurisdiction, the two-pronged test of *Aguilar-Spinelli* [1] has been abandoned in favor of the *Gates* "totality of circumstances" test in assessing the sufficiency of the probable cause allegation in a search warrant. *See Commonwealth v. Gray,* 509 Pa. 476, 503 A.2d 921 (1985). More to the point, however, Superior Court has applied the *Gates* approach to a warrantless arrest situation. *See Commonwealth v. Butler,* 354 Pa.Super. 533, 512 A.2d 667 (1986).

As opined by the court below, the warrantless search of the appellant's vehicle was justified under the "totality of circumstances" test enunciated in *Gates,* a step not yet taken by an appellate court in this Commonwealth. We find such an approach to a resolution of the matter at hand is unnecessary and can, on the other hand, be achieved without reliance upon a warrantless search analysis, as framed by the court below.

To explicate, the United States Constitution protects citizens from "unreasonable searches and seizures". U.S. Const.Amends. IV, XIV. Searches conducted without a search warrant are presumed unreasonable unless they are justified by one of the exceptions to the search warrant requirement; to-wit: a search incident to a lawful arrest is a recognized exception to the rule that a warrantless search is unreasonable. *See State v. Green,* 524 So.2d 927, 929–30 (La.App.1988).

A lawful arrest may be made without a warrant if an officer, given all of the circumstances known to him and his making a practical common sense decision therefrom, had probable cause to believe that a crime was committed or was in the process of being committed by the suspect. *See Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225–26, 13 L.Ed.2d 142 (1964); *Commonwealth v. Butler,* supra.

In the case *sub judice,* the appellant contends, *inter alia,* that the information provided by the unreliable informant

1. *See Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

did not establish probable cause for his warrantless arrest. We disagree.

■ An informant's information may provide adequate data to establish probable cause for a warrantless arrest if the basis for the information and his/her reliability, when examined under a totality-of-circumstances test, are established. Relevant considerations under this test include an informant's veracity, reliability and basis of knowledge. *See Illinois v. Gates*, supra. Further, one of the indicia facilitating a finding of adherence with *Gates* includes corroboration of information supplied by an informant, be it either by the police's own investigation or through other informants—be they confidential, paid or citizens known in the community. *See United States v. Leisure*, 844 F.2d 1347, 1355 (8th Cir.1988); *United States v. Zambrana*, 841 F.2d 1320, 1333–34 (7th Cir.1988); *State v. Poczontek*, 90 N.C.App. 455, 368 S.E.2d 659, 661 (1988); *Goldsby v. State*, 186 Ga.App. 180, 367 S.E.2d 84, 86 (1988); *People v. Beck*, 167 Ill.App.3d 412, 118 Ill.Dec. 201, 521 N.E.2d 269, 273 (1988); *Bush v. State*, 523 So.2d 538, 545 (Ala.Cr.App.1988).

■ Instantly, we had a running account by a "disclosed" informant regarding the appellant's drug activities spanning the middle of August through September 13th of 1986 in Lancaster County. In particular, the informant/Baldwin admitted to purchasing cocaine and hashish from the appellant on "numerous" occasions, the time frame of which the police understood to be recent to the events under scrutiny here. Also, Baldwin gave the police the appellant's address, his phone number, his business activity and the two types of vehicles he owned. These matters were confirmed by the police, either by surveillance or with a check of government agencies.

Additionally, the first meeting between the appellant and Baldwin occurred at the informant's apartment on the day and time stated by the informant, a fact verified by police observation. The purchase of the "cutting" ingredient by Baldwin at the appellant's insistence, as well as its ultimate transfer to the appellant, was witnessed by the police at a

time and place chosen by the appellant and communicated to the authorities by Baldwin. In fact, once the cocaine had been "cut" and this event was communicated to Baldwin by the appellant, he (the appellant) arrived at Baldwin's apartment a short time after Baldwin had signaled the police that the exchange (of money for drugs) was about to take place.

Lastly, we have Agent Roderick's testimony that a lot of information given by Baldwin concerned "things" that the police "already knew". Therefore, the police thought that Baldwin was "telling the truth on these items" involving the appellant. For example, the informant advised the authorities of three or four individuals dealing in cocaine in the Lancaster area, as well as one individual involved with marijuana. This information was corroborated by other citizen complaints about those involved, all of whom had been arrested before and had been investigated by Agent Roderick. Thus, premised upon what the informant had told the agent, he believed this "was consistent with other information that (he) had received." Even one of the agent's co-worker's (Detective Walters) mentioned that he had information that the appellant was "involved in drug traffic and that (the appellant) was a worthwhile target of investigation".

We believe that the detailed information proffered by Baldwin, which was verified by the police personally or through third-party sources, constituted the type of "cumulative" data intended by *Gates* to satisfy its totality-of-circumstances test so as to uphold the warrantless arrest challenged by the appellant. *See Commonwealth v. Butler*, supra; *see also Goldsby v. State*, supra; *People v. Beck*, supra; *Bush v. State*, supra.

 Because the police had probable cause to believe that the appellant was transporting drugs to Baldwin for the purpose of sale, they acted within the law when they searched the rear, floor portion of his vehicle. Where police officers have probable cause to believe a vehicle is carrying contraband, they may conduct a search of the vehicle as thorough as a district justice could authorize in a warrant.

In such a case, the police may search compartments and containers (here it was two boxes containing cocaine and hashish, respectively) whose contents are not in plain view. *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Thus, the drugs seized, incident to a lawful arrest of the appellant, were properly confiscated from the vehicle and admitted into evidence. *See People v. Beck*, supra.

Because we find that the actions of the court below were proper, although for reasons other than those advanced by the trial court, we affirm the judgment.

Judgment of sentence affirmed.