*403
 
 OPINION PER CURIAM:
 

 This is a Commonwealth appeal from an order suppressing both the physical evidence found during a search of appellee’s automobile and the alleged statements appellee made to the police officers. Finding no error, we affirm.
 

 On this appeal, the Commonwealth contends: (1) that the trial court erred when it found that the Commonwealth failed to prove probable cause and that exigent circumstances are required to justify a warrantless search of an automobile; (2) that the court erred when it determined that the “white-line” stop of appellee’s automobile was invalid; and (3) that the court erred when it considered misconduct of the law enforcement officers when appellee did not plead such misconduct nor did appellee articulate any prejudice.
 

 On March 11, 1990, Pennsylvania State Troopers McCauley and Hudson stopped appellee’s vehicle which was traveling on Interstate 80 in Clarion County. The troopers asked appellee for his registration and license, removed appellee from the vehicle and began to search the vehicle. Trooper McCauley found a small plastic bag containing marijuana in the front seat of the car. At some point, Trooper Hudson left the scene and the search ceased until Corporal Patterson arrived. Corporal Patterson continued the search by entering the car and removing the inside panels. He found thirty pounds of marijuana on the right side and thirty pounds of marijuana on the left side between the doors and the wheel wells. Corporal Patterson also interrogated appellee. During the search, other police officers, as well as a search dog, arrived. After the marijuana was found, appellee signed a form consenting to the search. Appellee was arrested and charged with possession of marijuana and possession of marijuana with intent to deliver.
 

 After a preliminary hearing on March 15, 1990, appellee was held for court. Appellee then filed a petition for a writ of habeas corpus challenging the sufficiency of the evidence at the preliminary hearing. A hearing on that petition was held on April 19, 1990. At that time, the court found that there was sufficient evidence to hold the case for court.
 
 *404
 
 Appellee then filed an omnibus pretrial motion seeking suppression of both the physical evidence and the statements. At the hearing on the suppression motion, it was stipulated that the testimony of the April 19 hearing would be considered part of the entire testimony on the issues of suppression.
 

 The transcripts from the two hearings present widely divergent testimony from the police officers involved. At the habeas corpus hearing, Trooper McCauley testified that he stopped appellee because he timed appellee with radar at 61 miles per hour and because the vehicle and driver fit the profile of a drug courier in accordance with his “white line” training.
 
 [1]
 
 He testified that the car had either Texas or Oklahoma plates, that the driver looked straight ahead and did not look at the two marked police cars, that the driver gripped the wheel tightly and looked nervous, and that the driver appeared to be Italian. Trooper McCauley stated several times that the sole reason he stopped the vehicle was because it was going 61 miles per hour. He admitted, however, that the radar was done through glass which was against regulations, and he did not issue even a warning for speeding. Trooper McCauley also testified that appellee verbally consented to the search. Patrick J. McCarthy, a narcotic agent for the office of the Attorney General, also testified at the habeas corpus hearing. His testimony was that he met appellee at the Shippenville State Police barracks and filed the formal charges against him. He testified to the results of the laboratory examination of the physical evidence. He also stated that the only basis for the intent to deliver charge was the quantity of marijuana found.
 

 At the suppression hearing, Trooper McCauley testified that he received a call directing him and Trooper Hudson to go out past Exit 10 on Interstate 80 and look for a mid-70’s brown Chevy heading eastbound, with Oklahoma plates,
 
 *405
 
 driven by a Hispanic male. They were instructed to do a “white line” stop. Further testimony at the suppression hearing revealed that the state police were involved in an investigation which included a wiretap. Trooper Wagner, one of the officers involved in the wiretap investigation, testified that an informant had told him that a Mexican individual named Alonzo would be bringing a load of drugs to the person who was the target of the wiretap. The informant also told him Alonzo was driving a brown, older Chevy with Oklahoma plates on it. He also testified to certain intercepted conversations between the wiretap target and a Mexican individual. In one call, the night before, the caller advised the target that Alonzo was eight hours away. There was another call the next day to the effect that “I’m between Exits 3 and 4” and the target replied “I’ll be right up.” Corporal Patterson testified that Trooper Wagner had relayed this information to him. Agent McCarthy, called by defense counsel, testified that he was aware of the evidence gathered from the wiretap and the informant at the time of the habeas corpus hearing but did not disclose it to the court and, in fact, had not disclosed it to the district attorney at that time.
 

 On review of a suppression ruling, this court is, of course, bound by the factual findings of the suppression court as long as those findings are supported by the record.
 
 Commonwealth v. Hamlin,
 
 503 Pa. 210, 469 A.2d 137 (1983). We may reverse the suppression court only if the legal conclusions drawn from the facts are in error.
 
 Commonwealth v. Cortez,
 
 507 Pa. 529, 491 A.2d 111 (1985). Furthermore, credibility determinations are within the province of the trial court and may not be disturbed on appeal.
 
 Commonwealth v. Whitney,
 
 511 Pa. 232, 512 A.2d 1152 (1986).
 

 Because it directly impacts on the suppression court’s findings of fact, we will discuss appellant’s third issue first. The Commonwealth here contends that the court erred in considering the police officers’ misconduct because the same was not pleaded by appellee prior to or during the
 
 *406
 
 suppression hearing. What the Commonwealth politely refers to as “misconduct,” was characterized by the trial court as follows:
 

 (during Trooper McCauley’s testimony)
 

 “I have been offended enough by this. I have to tell you that I have been offended enough by this. This is the worst testimony and the worst case I have ever heard of. There’s no question that this testimony was false and meant to deceive this Court in April____ When you take an oath in this Court it says the whole truth and a child would know this is not the whole truth. It’s more than deceptive, it’s false. And I sit in here and I hear defendants testify falsely, as any Judge does, we expect it, but when I sit here and a member of the Pennsylvania State
 

 Police testifies falsely I’m offended____
 

 It totally contradicts what this man told me in April ... This is a falsehood. You don’t have to bring in your entire case at a preliminary hearing but you don’t deceive a Court.”
 

 Tr. 8/21/90 pp. 37-40.
 

 In its Findings of Fact, the suppression court specifically found that Trooper McCauley and Agent McCarthy intentionally testified falsely about facts which were material to the issues before the court and that, therefore, these two witnesses were not credible. Findings of Fact and Conclusions of Law, p. 15. The Commonwealth now apparently argues that the court should not have considered the prior false testimony of these two witnesses. We do not agree.
 

 It has long been the law that prior false, contradictory or conflicting statements of a witness are admissible for the purpose of impeaching a witness’s credibility.
 
 Commonwealth v. Updegrove,
 
 413 Pa. 599, 198 A.2d 534 (1964). The Commonwealth seeks to exclude these prior statements by arguing (1) that the prior testimony was not actually perjury or false swearing and (2) that the officers believed that they were prohibited by the wiretap statute from disclosing the contents of the wiretap. We know of no rule of law, nor has the Commonwealth cited any case, which
 
 *407
 
 requires that prior inconsistent statements rise to the level of perjury or false swearing before they are admissible to impeach a witness’s credibility. As to the latter argument, the Commonwealth concedes that an officer is permitted to testify in court without criminal liability, 18 Pa.C.S. § 5717(b), and further concedes that the officers could at least have informed the district attorney of the existence of the wiretap. Appellant’s Brief, pp. 26, 27. Instead, the officers chose to fabricate their testimony in an attempt to deceive both the prosecuting attorney and the court into believing that the only reason why appellee was stopped was because he was speeding and the only reason he was charged with possession with intent to deliver was because of the amount of marijuana found, when in fact neither of these statements were true.
 

 The Commonwealth also contends that this “misconduct” is not in and of itself a basis for suppression. The Commonwealth misunderstands the suppression court’s findings and discussion. Nowhere does the trial court indicate that it is granting appellee’s suppression motion on this basis. Rather, the suppression court considered the prior false testimony in determining the credibility of Trooper McCauley and Agent McCarthy and in deciding that their testimony, as a whole, was not worthy of belief. Memorandum and Order Denying Motion to Reconsider, 10/16/90, p. 5. This was proper as it is within the province of the fact finder to believe all, part, or none of the evidence.
 
 Commonwealth v. Whitfield,
 
 475 Pa. 297, 380 A.2d 362 (1977). The Commonwealth cannot, and indeed does not, argue that deliberately false prior testimony cannot be considered for this purpose.
 

 The suppression court’s determination that Trooper McCauley’s testimony was not credible undermines the Commonwealth’s second argument, that the “white line” stop was valid. The Commonwealth bases its argument on Trooper McCauley’s testimony that appellee was traveling 61 miles per hour and McCauley therefore had a valid reason for stopping appellee. However, the trial court
 
 *408
 
 expressly disbelieved Trooper McCauley’s testimony that he checked the speed with radar and clocked appellee’s speed at 61 miles per hour. In a suppression hearing, the Commonwealth bears the burden of proving by a preponderance of the evidence that a search or seizure did not violate the Fourth Amendment.
 
 Commonwealth v. Williams,
 
 380 Pa.Super. 227, 551 A.2d 313 (1988). Absent Trooper McCauley’s testimony, there is absolutely no evidence to support even a suspicion of a Motor Vehicle Code violation.
 

 The Commonwealth alternatively contends that the stop was justified under
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under
 
 Terry,
 
 an officer may make an investigatory stop where he observes unusual conduct which leads him reasonably to conclude that criminal activity may be afoot. Such an investigatory stop of an automobile must be based on objective facts creating a reasonable suspicion that the motorist is presently involved in criminal activity.
 
 Commonwealth v. Fassett,
 
 496 Pa. 529, 437 A.2d 1166 (1981);
 
 Commonwealth v. Monaghan,
 
 295 Pa.Super. 450, 441 A.2d 1318 (1982). The officer must be able to point to specific and articulable facts which taken together with rational inferences from those facts reasonably warrant the intrusion.
 
 Id.
 

 The suppression court found as a fact that the Commonwealth failed to prove that Trooper McCauley actually observed appellee gripping the wheel and looking nervous. Thus, the only “suspicious” conduct the Commonwealth can articulate is that appellee was driving an older model car with out-of-state plates and that the driver appeared to be Hispanic or Mediterranean. In
 
 Commonwealth v. Fassett, supra,
 
 police officers received a radio dispatch that three or four black males in a light-colored sedan were being sought in connection with a bank robbery. Approximately nine hours after the robbery, a police officer observed the defendant and another person riding in a white Oldsmobile sedan approximately eight miles from the robbery scene. The Commonwealth conceded that the sole factors motivating the stop were the light color of the
 
 *409
 
 vehicle and the race of its occupants. In holding that the officer did not have a reasonable suspicion based on articulable facts, the Supreme Court stated that the factors relied upon were “so all-encompassing as to render it impossible to reasonably suspect” defendant’s or any other particular automobile.
 
 Id,.,
 
 496 Pa. at 534, 437 A.2d at 1169. Likewise in the instant case, we cannot conclude that an officer can reasonably suspect criminal activity from the mere fact that a Hispanic-looking person is driving a late model car with out-of-state license plates.
 

 Even if the suppression court had credited Trooper McCauley’s other testimony, the only additional factors cited were that appellee was gripping the wheel and looking nervous and that he looked straight ahead when passing the marked police cars. In
 
 United States v. Smith,
 
 799 F.2d 704 (11th Cir.1986), a Florida state trooper stopped a car in reliance on a drug courier profile. The factors cited to justify the stop were that the two young men were traveling at 3:00 a.m. in an out-of-state car and that the driver did not look at the patrol car as he passed it. Finding that these factors, considered together or separately, did not give rise to a reasonable suspicion of illegal activity, the court called the officer’s suspicion a “classic example of those ‘inarticulate hunches’ that are insufficient to justify a seizure under the fourth amendment.”
 
 Id.
 
 at 707. We cannot conclude that the factors set forth by Trooper McCauley are any more indicative of criminal activity than the factors set forth in
 
 Smith.
 

 We now turn to the Commonwealth’s argument that there was probable cause for the stop and search. Probable cause exists if the facts and circumstances within the knowledge of the police officer at the time of the arrest are sufficient to justify a person of reasonable caution to believe the suspect has committed a crime.
 
 Commonwealth v. Vinson,
 
 361 Pa.Super. 526, 522 A.2d 1155 (1987). Clearly, Troopers McCauley and Hudson did not have probable cause because they did not have either personal knowledge or hearsay evidence of any facts and circumstances
 
 *410
 
 that would reasonably lead them to believe that appellee had committed a crime. If the arresting officer does not have sufficient knowledge to establish probable cause, the arrest may still be valid if the officer ordering the arrest possessed sufficient information to give rise to probable cause.
 
 Commonwealth v. Fromal,
 
 392 Pa.Super. 100, 572 A.2d 711 (1990).
 

 The knowledge which the Commonwealth claims establishes probable cause followed a rather convoluted trail. Trooper McCauley testified that Trooper Hudson took the call from the station and received the information from the Corporal. They were told only to go out past Exit 10 and look for a brown, mid-70’s Chevy heading eastbound with Oklahoma plates and a Hispanic driver. They were to do a “white line” investigation on the car. Trooper Wagner testified that he contacted the DuBois barracks and told Corporal Kirsch that there was a Mexican individual who would be driving an older model Chevy with Oklahoma tags on it and the vehicle would probably be loaded with contraband and to attempt to do a “white line” stop. Trooper Wagner testified that he did not give Corporal Kirsch any other information. Trooper Wagner testified that he gave Corporal Patterson this same information. Thus, not only did the arresting officers have insufficient knowledge to establish probable cause, they were never ordered to arrest appellee on this basis but rather were ordered to attempt to stop appellee on some other basis. Nevertheless, we will review the evidence which the Commonwealth contends establishes probable cause on the part of Trooper Wagner.
 

 Trooper Wagner testified as to information received from a confidential informant:
 

 Q What gave you cause to believe that this vehicle would be carrying contraband?
 

 A Through information from a confidential informant we were furnished — we were furnished information that this individual here would make—
 

 Q That would be Mr. Valenzuela?
 

 
 *411
 
 A Yes. Would make a delivery in the Clarion County of marijuana on a seven to ten day rotation basis and usually it would be fifth or sixty pounds at a time. We also received information from the same informant that he would — was soon to arrive.
 

 Sic * * * * #
 

 Q Trooper Wagner, how specific was that information that you received as it was related to Mr. Valenzuela? A It was that it was a Mexican individual, it was on [sic] older model Chevy car, two door, and it had Ohio— Oklahoma registration on it. And that he usually came in from Oklahoma every five to seven days, delivered marijuana, and then would return to Oklahoma.
 

 A No, we did not have the registration number of the vehicle, that I know of. That was not furnished to me by the informant. I think the vehicle was an older model Chevy, early seventies, brown in color, tan, just a Mexican driving it, male.
 

 Tr. 8/21/90, pp. 59-61, 63.
 

 Trooper Wagner also testified to the telephone conversations previously discussed. The Commonwealth contends that this evidence sufficiently establishes probable cause. The suppression court, however, found probable cause lacking because there was no testimony relating to the veracity or reliability of the confidential informant and no testimony as to how the informant became aware of the information he furnished to Trooper Wagner.
 

 Whether probable cause exists to justify a warrantless arrest is to be determined by the “totality of circumstances” test set forth in
 
 Illinois v. Gates,
 
 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
 
 Commonwealth v. Gray,
 
 509 Pa. 476, 503 A.2d 921 (1985);
 
 Commonwealth v. Butler,
 
 354 Pa.Super. 533, 512 A.2d 667 (1986). Under this test, when an informant's information is used to establish probable cause, the relevant considerations include the informant’s veracity, reliability and basis of knowledge.
 
 *412
 

 Commonwealth v. York,
 
 381 Pa.Super. 55, 552 A.2d 1092 (1989). Corroboration of the informant’s information, either by the police’s investigation or through other informants, may indeed establish the informant’s veracity and reliability.
 
 Id.
 

 The Commonwealth contends that such corroboration is provided by two things: the intercepted telephone calls described above, and the numerous telephone calls detailed in the affidavit of probable cause submitted in support of the wiretap application. Although the affidavit of probable cause was admitted as an exhibit at the suppression hearing, it does not appear in the original record forwarded to this court. Nevertheless, we have reviewed the copy included in the Commonwealth’s reproduced record and find that it does not assist the Commonwealth’s argument. The calls all occurred approximately a month to six weeks before appellee was stopped and none of them refer either to appellee specifically or to a Hispanic or Mexican person from Oklahoma. They do not contain or corroborate any of the information relating to this appellee which was proffered by the confidential informant. We conclude, as did the trial court, that the Commonwealth has not established the informant’s veracity, reliability or basis of knowledge, and therefore the Commonwealth has failed to establish that probable cause existed for the stop.
 

 We need not reach the Commonwealth’s argument regarding the necessity of exigent circumstances to justify a warrantless search of appellee’s automobile because the Commonwealth concedes that probable cause is a necessary prerequisite in this case.
 
 Carroll v. United States,
 
 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925);
 
 Commonwealth v. Baker,
 
 518 Pa. 145, 541 A.2d 1381 (1988).
 

 The Commonwealth concludes its argument by pointing out that sixty pounds of marijuana was found in appellee’s car. The Commonwealth contends that the “truth of this particular fact is unassailable, and any so-called allegation of prosecutorial misconduct does not affect
 
 *413
 
 the truth of this fact, nor should it affect the admissibility of this evidence.” Appellant’s Brief at p. 28. The admissibility of evidence is in fact affected by the conduct of the police; evidence which is obtained in violation of a person’s constitutional rights, whether the police act in good faith or bad, is inadmissible.
 
 Commonwealth v. Edmunds,
 
 526 Pa. 374, 586 A.2d 887 (1991). We echo the trial court’s observation that the Commonwealth “must know that the suppression of evidence caused by a violation of the search and seizure clause of either the United States Constitution or the Pennsylvania Constitution is totally unrelated to guilt.” Opinion at p. 39. As the Florida Supreme Court has so eloquently stated:
 

 “Without doubt the inherently transient nature of drug courier activity presents difficult law enforcement problems. Roving patrols, random sweeps and arbitrary searches or seizures would go far to eliminate such crime in this state [and nation]. Nazi Germany, Soviet Russia, and Communist Cuba have demonstrated all too tellingly the effectiveness of such methods. Yet we are not a state that subscribes to the notion that ends justify means. History demonstrates that the adoption of repressive measures, even to eliminate a clear evil, usually results only in repression more mindless and terrifying than the evil that prompted them. Means have a disturbing tendency to become the end result. And as Judge Glickstein noted in his dissent in
 
 Snider v. State,
 
 501 So.2d 609, 610 (Fla.App.1986): ‘Occasionally the price we must pay to make innocent persons secure from unreasonable search and seizure of their persons or property is to let an offender go. Those who suffered harassment from King George Ill’s forces would say that is not a great price to pay. So would residents of the numerous totalitarian and authoritarian states of our day.’ ”
 

 Bostick v. State of Florida,
 
 554 So.2d 1153 (Fla.1989), quoted in
 
 United States v. Laymon,
 
 730 F.Supp. 332, 342 (D.Colo.1990)
 

 Order affirmed.
 

 [1]
 

 . The term "white-line” refers to a program whereby police officers are trained to look for drug couriers based on a ¡general outline or profile of "what kind of car he drives, what he looks like and how he keeps things in the vehicle." Tr. 4/19/90, p. 21.