663 A.2d 216

**COMMONWEALTH of Pennsylvania,**

v.

**Ronald D. KNOTTS, Appellant.**

Superior Court of Pennsylvania.

Argued June 13, 1995.

Filed Aug. 9, 1995.

62

Dericci T. Horwatt, Washington, for appellant.

John C. Pettit, Dist. Atty., Washington, for appellee. (Submitted)

Before CIRILLO, FORD ELLIOTT and HESTER, JJ.

CIRILLO, Judge:

Ronald D. Knotts appeals from a judgment of sentence entered in the Court of Common Pleas of Washington County. We reverse.

On January 13, 1994, at approximately 8:00 a.m., Trooper Wendy Richards of the Pennsylvania State Police observed Knotts driving along Route 136 in a silver Oldsmobile Cutlass Calais. After Knotts had passed her vehicle, Trooper Richards pulled out behind him onto Route 136 and, after following Knotts for a brief period, signaled Knotts to pull off to the side of the roadway.

Trooper Richards did not see Knotts commit any traffic violations before she had signaled for him to pull over. Rather, Trooper Richards stopped Knotts because she had received a tip from an anonymous informant regarding an unsolved hit-and-run accident that had occurred at the intersection of Routes 519 and 136 in late December of 1993. The informant's tip provided that a silver or light blue Oldsmobile Cutlass Calais was involved in the hit-and-run accident, and that this vehicle travels on Route 136 everyday between 8:00 a.m. and 9:00 a.m.

After Trooper Richards stopped Knotts, she informed him that she was investigating a hit-and-run accident and that she would like to take a look at the right side of his vehicle. Knotts offered no objection. Trooper Richards could not find

any damage to Knotts' vehicle. Trooper Richards then advised Knotts that there was no damage to his vehicle, but that she would like to see his driver's license and vehicle registration.

Knotts provided Trooper Richards with a registration and insurance card under the name of Ronald Delton Knotts. Knotts identified himself, however, as Vincent Knotts to Trooper Richards. Having experienced a similar situation a few months earlier, where the driver of a vehicle purported to be his brother, Trooper Richards returned to her vehicle and requested information via her radio for Ronald, as well as Vincent, Knotts. The results of Trooper Richards' search established that Defendant Knotts was driving under a suspended license for a May, 1992 violation for driving under the influence of alcohol (DUI).[1] Knotts was subsequently charged with violating 75 Pa.C.S.A. § 1543(b) for driving while license is suspended or revoked, DUI related.

A trial was held before District Justice Jay Weller, at which time Knotts was found guilty of violating section 1543(b). Knotts appealed to the Court of Common Pleas of Washington County requesting a trial de novo. A trial de novo was held before the Honorable Debbie O'Dell Seneca on December 12, 1994, and Knotts was again found guilty of violating section 1543(b). Prior to Knotts' conviction under section 1543(b), Judge Seneca rejected Knotts' motion to suppress any information that Trooper Richards received concerning Knotts' identification and driving record, which Knotts claims was obtained without probable cause.

On appeal, Knotts questions whether it was error for the trial court to admit evidence which had been obtained from an illegal investigatory stop. More specifically, Knotts argues that the trial court should have suppressed the evidence obtained by Trooper Richards regarding his identification and his driving record since Trooper Richards did not have probable cause to stop his vehicle.

---

1. Knotts' license was suspended for one year effective July 27, 1993, which spans the January 13, 1994 driving occurrence involved in this case.

When we review an order denying a motion to suppress evidence, we must determine whether the factual findings of the trial court are supported by the evidence of record. *Commonwealth v. Donahue*, 428 Pa.Super. 259, 278, 630 A.2d 1238, 1247 (1993). In making this determination, this court may only consider the evidence of the Commonwealth's witnesses, and so much of the witnesses for the defendant, as fairly read in the context of the record as a whole, which remains uncontradicted. *Id.* If the evidence supports the findings of the trial court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are erroneous. *Id.*

At the hearing on the motion to suppress before Judge Seneca, Trooper Richards testified to the facts as described above. In light of this evidence, Knotts argued that the amount of information available to Trooper Richards at the time she stopped him was insufficient to justify the stop.

When police stop a vehicle in this Commonwealth for investigatory purposes, the vehicle, and its occupants, are considered "seized" and this seizure is subject to constitutional constraints. *Commonwealth v. Blouse*, 531 Pa. 167, 611 A.2d 1177 (1992).

> [A]n officer may make an investigatory stop where he observes unusual conduct which leads him reasonably to conclude that criminal activity may be afoot. Such an investigatory stop of an automobile must be based on objective facts creating a reasonable suspicion that the motorist is presently involved in criminal activity. The officer must be able to point to specific and articulable facts which[,] taken together with rational inferences from those facts[,] reasonably warrant the intrusion.

*Commonwealth v. Valenzuela*, 408 Pa.Super. 399, 408, 597 A.2d 93, 98 (1991) (citations omitted).

In this case, we must determine whether the information available to Trooper Richards at the time she pulled over the defendant created a reasonable suspicion that Knotts was "presently involved in criminal activity." When Trooper Rich-

ards stopped Knotts, she had information from an informant that (1) the vehicle that was involved in the hit-and-run accident on December 28, 1993 at the intersection of Routes 519 and 136 was a silver or light blue Oldsmobile Cutlass Calais, and (2) the vehicle travels on Route 136 everyday between 8:00 a.m. and 9:00 a.m.

■ The information available to Trooper Richards was provided by an anonymous informant. "Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability." *In the Interest of S.D.*, 429 Pa.Super. 576, 579, 633 A.2d 172, 174 (1993) (quoting *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)). This court has elaborated on the type of information provided by an informant.

Both factors—quantity and quality—are considered in the "totality of the circumstances—the whole picture," that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable.

*Commonwealth v. Wilson*, 424 Pa.Super. 110, 115, 622 A.2d 293, 295 (1993) (quoting *Alabama*, 496 U.S. at 329, 110 S.Ct. at 2415). Veracity, reliability and basis of knowledge are relevant in the reasonable suspicion context. *Wilson*, 424 Pa.Super. at 116, 622 A.2d at 296 (quoting *Alabama*, 496 U.S. at 327, 110 S.Ct. at 2414–15).

■ When we evaluate the information available to Trooper Richards in the "totality of the circumstances" at the time she stopped Knotts, we see that the quantity, as well as the quality, of the information was very poor. First, there was a paucity of information, and the facts which were provided were extremely general in nature. Second, the veracity, reliability and basis of knowledge of the anonymous informant's information were not established.

Thus, the informant provided Trooper Richards with no objective facts creating a reasonable suspicion that Knotts was

*presently* involved in criminal activity at the time of the investigatory stop. *See Valenzuela,* 408 Pa.Super. at 408, 597 A.2d at 98 (holding that an officer cannot reasonably suspect criminal activity from a confidential informant's tip that a Hispanic-looking person would be driving a late model car with out-of-state license plates).

Also, while a police officer may stop a motor vehicle if he or she reasonably believes that a provision of the Vehicle Code is being or has been violated, *Commonwealth v. DeWitt,* 530 Pa. 299, 608 A.2d 1030 (1992), Trooper Richards testified that she did not witness Knotts commit a violation of the Vehicle Code. Moreover, Trooper Richards did not possess sufficient information at the time she stopped Knotts to reasonably believe that he had violated a provision of the Vehicle Code.

Having determined that no reasonable suspicion existed to stop Knotts, we turn next to the question of whether probable cause existed for the stop. Probable cause exists for a stop if the facts and circumstances within the knowledge of the police officer are sufficient to warrant a person of reasonable caution to believe that a crime *has been* committed. *Valenzuela,* 408 Pa.Super. at 409, 597 A.2d at 99. Accordingly, we must again examine the information available to Trooper Richardson at the time she stopped Knotts since probable cause, like reasonable suspicion, is dependent upon both the content of the information possessed by police and its degree of reliability. *In the Interest of S.D., supra,* at 429 Pa.Super. 576, 633 A.2d 172; *Wilson,* 424 Pa.Super. at 115, 622 A.2d at 295 (1993).

The informant in this case provided Trooper Richards with the type of vehicle which was involved in the hit-and-run and the time at which the vehicle would be at a particular location. It is important to note what information Trooper Richards did not have at the time she pulled over Knotts.

Trooper Richards did not know the identity of the informant, as the telephone call was from an anonymous informant who did not give his name, and Trooper Richards had never worked with this person. As a result, any value which may be

attributed to the informant's tip is lessened by his anonymity. *Compare Commonwealth v. York*, 381 Pa.Super. 55, 62, 552 A.2d 1092, 1095 (1989) (holding that an informant's information may provide adequate data to establish probable cause if the basis for the information and his/her reliability, when examined under a totality-of-circumstances test, are established) *with Commonwealth v. Bruner*, 388 Pa.Super. 82, 94, 564 A.2d 1277, 1282 (1989) (recognizing that "*identified* citizens who report their observations of criminal activity to police are assumed to be trustworthy, in the absence of special circumstances") (emphasis supplied).

■ At the hearing on the motion to suppress, there was no testimony relating to the veracity or reliability of the anonymous informant. Corroboration of the informant's information, either by police investigation or through other informants, may indeed establish the informant's veracity and reliability. *York*, 381 Pa.Super. at 62, 552 A.2d at 1095 (1989). There was no such corroboration of the informant's information in this case.

In addition, there was no testimony as to how the informant became aware of the information he provided to Trooper Richards. For example, the informant did not tell Trooper Richards how it was that he knew that this vehicle was involved in the hit-and-run accident, nor did Trooper Richards inquire as to how the informant knew that this vehicle was involved in the accident. Moreover, the informant did not tell Trooper Richard whether the individual driving the vehicle would be a male or a female.

It is clear that probable cause did not exist to stop Knotts. *See Valenzuela*, 408 Pa.Super. at 412, 597 A.2d at 100 (holding that probable cause to stop defendant's vehicle did not exist where no evidence was offered to establish confidential informant's veracity, reliability, or basis of knowledge despite the fact that informant provided police with general appearance of defendant and automobile and the time during which defendant would be in a specific area).

In view of these facts, it appears that the legal conclusions of the trial court are not supported by the evidence of record. *Donahue, supra,* at 428 Pa.Super. 259, 630 A.2d 1238. The objective facts did not create a reasonable suspicion that Knotts was presently involved in criminal activity when stopped by Trooper Richards, nor did the circumstances justify a person of reasonable caution to believe that Knotts had committed a crime. *Valenzuela, supra,* at 408 Pa.Super. 399, 597 A.2d 93.

Judgment of sentence reversed.