J-S43039-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                            :            PENNSYLVANIA
                                            :

v.                                     :
                                            :

CLINTON BROWN                 :
                                            :

           Appellant               :      No. 598 EDA 2024

Appeal from the Judgment of Sentence Entered January 18, 2024
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0003075-2020

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:          **FILED FEBRUARY 5, 2026**

Clinton Brown (hereinafter, "Appellant") appeals from the judgment of sentence imposed following his convictions for possession with the intent to deliver a controlled substance (35 P.S. § 780-113(a)(30)), possession of a controlled substance (35 P.S. § 780-113(a)16)) and possession of drug paraphernalia (35 P.S. § 780-113(a)(32)), for which he received an aggregate sentence of 3 ½ to 7 years of incarceration. Appellant's sole issue challenges the denial of his pre-trial motion to suppress. After careful review, we affirm.

The trial court briefly recited the underlying facts of this case as follows:

> Following several instances of surveillance conducted in the vicinity, on or about May 7, 2020, pursuant to a warrant, a search of property was conducted in Prospect Park, PA involving multiple law enforcement agencies. At the time the search of the house was being executed, [Appellant] arrived on scene, a black male in a dark colored sedan vehicle, in the morning hours, pull[ed] up the street . . ., at which point, officers approached and conducted an investigative detention. During this stop, they located 56 baggies of Fentanyl on [Appellant's] person.

Trial Court Opinion (TCO), 4/8/25, at 2. Appellant was then arrested.

Appellant filed a motion to suppress on April 28, 2022, alleging that police lacked probable cause to effectuate his arrest. After a hearing, the trial court denied the motion. Thereafter, a jury convicted Appellant of the three charges listed above. On January 18, 2024, the trial court imposed an aggregate sentence of 3½ to 7 years' incarceration. Appellant filed a timely *pro se* notice of appeal to this Court on February 12, 2024, and counsel filed a second one on February 16, 2024.[1] The trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Counsel timely filed this statement on July 12, 2024.[2] Thus, the appeal is ready for our disposition.

Appellant frames his issue on appeal as follows:

1. Did the lower court err when it found that police had probable cause to seize [Appellant] from his vehicle?

Appellant's Brief at 2.

_____

[1] Appellant's timely *pro se* notice of appeal, filed February 12, 2024, was given Superior Court docket number 548 EDA 2024. Counsel's (also timely) notice of appeal to this Court was filed on February 16, 2024, and given docket number 598 EDA 2024. On August 16, 2024, noting that both appeals stemmed from the same judgment of sentence and were therefore duplicative, this Court *sua sponte* discontinued the appeal at docket number 548 EDA 2024.

[2] Although not listed as an entry on the docket of this case, counsel included a copy of the statement of errors, stamped with a filing date of July 12, 2024, in his appellate brief. Further, the trial court acknowledged receipt of the Rule 1925(b) statement and attached it to its Rule 1925(a) opinion. **See** TCO, at 1, n.1. Thus, we deem Appellant to have complied with the trial court's concise statement order.

When considering the validity of the denial of a motion to suppress, our standard of review

> is limited to determining whether the findings of fact are supported by the record and whether the legal conclusions drawn from those facts are in error. In making this determination, this Court may only consider the evidence of the Commonwealth's witnesses, and so much of the witnesses for the defendant, as fairly read in the context of the record as a whole, which remains uncontradicted. If the evidence supports the findings of the trial court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are erroneous.

*Commonwealth v. Easter*, 331 A.3d 675, 679, (Pa. Super. 2025), *reargument denied* (Mar. 13, 2025), *appeal denied*, 345 A.3d 1199 (Pa. 2025). Appellate review of a suppression issue is limited to the suppression hearing record. *Id.* "With respect to a suppression court's factual findings, it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part[,] or none of the evidence presented[.]" *Id.*

Appellant challenges the finding that police had probable cause to arrest him. "A lawful arrest must be supported by probable cause." *Commonwealth v. Heidelberg*, 267 A.3d 492, 499 (Pa. Super. 2021) (*en banc*). A police officer must make a common sense decision whether there is a fair probability that a crime was committed by the suspect; this decision "is a highly fact-sensitive inquiry that must be based on the totality of the circumstances as viewed through the eyes of a prudent, reasonable, cautious police officer guided by [their] experience and training." *Commonwealth v. Wells*, 916 A.2d 1192, 1195 (Pa. Super. 2007). "It is important to view **all**

of the facts and the totality of the circumstances in order to avoid rendering a decision that is totally devoid of the commonsensical inferences that are drawn by trained police officers with regard to drug activity." *Id.* (internal citation and quotation marks omitted, emphasis in original).

As this Court has stated, "the validity of a warrantless arrest is determined by considering whether, at the moment the arrest was made, the officer had probable cause to make it, and the person arrested is believed to be the guilty party." ***Commonwealth v. Floyd***, 313 A.3d 1061, 1065 (Pa. Super. 2024) (citations and quotation marks omitted). The necessary probable cause for an arrest exists when the facts and circumstances known to the arresting officer are reasonably trustworthy and sufficient to justify a person of reasonable caution in believing that the arrestee has committed an offense. *Id.* (citation omitted). To find probable cause in this instance "requires only the probability, and not a *prima facie* showing, of criminal activity." *Id.* (citation omitted).

Appellant asserts that the trial court relied upon three factors to justify the finding of probable cause, and attacks each as insufficient to support that conclusion. Specifically, Appellant maintains:

> The lower court based it[s] suppression ruling on three factors: (i) the vehicle that was stopped matched the description of a vehicle that was observed during surveillance of a drug transaction on May 4, 2020; (ii) was present in the morning during the execution of a search warrant in a home suspected of drug activity; and, (iii) the vehicle matched the description of anonymous tips relaying that a dark colored sedan was engaged in drug activity.

Brief for Appellant at 6. Appellant then argues that these three factors do not justify Appellant's arrest as they do not directly link him to criminal activity. We thus consider the evidence presented at the suppression hearing to evaluate the trial court's decision.

The first witness, Prospect Park Police Officer Kyle Gross, testified that police had received an anonymous tip about ongoing drug activity at a particular residence, and that he was accordingly tasked with surveilling this residence on May 4, 2020. N.T. 10/28/22, at 8, 10. Officer Gross stated that during this surveillance he saw Brian Dunion,[3] a resident of that address, enter and exit the residence at various times while doing chores around the property. *Id.* at 10. Officer Gross also observed someone place a trash bag from inside the residence at the curb for disposal. *Id.* at 13. At some time during that morning, "a dark-blue-colored Chevy product sedan" drove down the street, described as "slowly creeping by" the house in question. *Id.* When the Chevy turned left at the intersection just past the residence under surveillance, Dunion exited the residence and followed the dark blue car around the corner and returned to the residence about two minutes later. *Id.* at 10. The officer admitted that he did not see a drug transaction, and he did not see Dunion with anything in his hands upon his return from his short walk up the street. *Id.* at 15. Further, Officer Gross admitted that he had not

---

[3] Appellant's brief refers to this person as "Brian Dunning," and the transcript spells this person's name as "Dunlin" at times, but the Commonwealth's brief and the trial court's opinion refer to this person as Brian *Dunion*. We use the latter spelling herein for consistency.

recorded the license place of the blue Chevy that he saw on May 4, 2020. *Id.* at 17. However, Officer Gross was also at the scene of Appellant's arrest on May 7, 2020, and he testified that the car Appellant drove on May 7 was the same car the officer had observed on May 4th. *Id.* at 22.

Also testifying at the suppression hearing was Sergeant Henry O'Neill, who had been involved investigating the numerous complaints received by neighbors about drug activity at Dunion's residence. *Id.* at 26. During surveillance of the residence on April 29, 2020, Sergeant O'Neill "observed a vehicle pull up out front of the house, the resident came out, [had] an interaction with the driver of that vehicle, and [went] back into his house." *Id.* at 27. After observing this interaction, Sergeant O'Neill performed a trash pull at the residence, finding drug use paraphernalia including used heroin packages marked "Dunkin' Donuts" and "Chinatown." *Id.* at 27-28. This sale did not appear to involve Appellant. *Id.* at 42.

Sergeant O'Neill was also involved in the execution of the search warrant at Dunion's residence on May 7. He explained that several officers, including members of the DEA and Delaware County Police detectives, participated in the search. *Id.* at 29. The officers observed the residence for a period, then, seeing no activity, decided to execute the warrant. *Id.* at 30. Dunion was present inside the residence, and, during conversation with the officers, indicated that he had just placed an order with his drug dealer who was expected to appear at the residence with the drugs momentarily. *Id.* at 32-33. According to Dunion, the dealer was a black male who would be driving

a blue car. *Id.* at 34. After hearing this, police told Dunion to wait, seated, on his front porch for the dealer's appearance, and to stand up when the dealer arrived. *Id.* Minutes later, a blue Chevy stopped in front of the residence and Dunion stood up. *Id.* at 35-36. At that point, the officers in the street surrounded the blue car and arrested Appellant. *Id.* at 36.[4]

Detective Michael P. Skahill, a member of the Criminal Investigations Division of the Delaware County District Attorney's office and former 25-year narcotics officer, testified that he was present when the search warrant was executed at Dunion's home. *Id.* at 65. Detective Skahill was informed prior to the execution that the officers may be looking for a black male driving a dark colored Chevy Impala or Lumina, an "average sedan." *Id.* at 66, 73. Dunion provided a signal when his dealer arrived at the location, which Detective Skahill stated was either that Dunion stood up when his dealer appeared or he said something to the officers standing just inside the home behind him. *Id.* at 68. At that point, the officers in their cars on the street converged on the dark blue Chevy and arrested the driver, Appellant. *Id.*

Officer Shaun Parker, a member on the DEA task force, was also present for the execution of the search warrant and Appellant's arrest. Officer Parker

_____

[4] At that moment he was surrounded, Appellant was not free to leave, and the encounter constituted an arrest requiring probable cause. *See Commonwealth v. Dunham*, 203 A.3d 272 (Pa. Super. 2019) (finding that a driver of a vehicle was seized when police conducted a traffic stop and he was not permitted to leave, which required an evaluation of the officer's having probable cause for the seizure).

testified that Dunion told the officers that a black male would be arriving in a dark Chevy to deliver him drugs. *Id.* at 89-90. According to Officer Parker, Dunion was told to stand up and move off the porch steps when his dealer arrived. *Id.* at 90. Dunion gave the signal and the officers stopped the dark Chevy on the street. *Id.* at 90-91. Officer Parker identified Appellant as the driver of the Chevy, and testified that he opened the car door and removed Appellant from the car. *Id.* at 91-92. As he exited the car, Officer Parker saw plastic baggies sticking out of the waistband of Appellant's shorts. *Id.* at 93. These baggies were seized and ultimately determined to be drugs in packaging marked "Chinatown." *Id.* at 94.

In his first challenge to the denial of suppression, Appellant asserts that the information obtained on May 4, 2020 did not provide any information that would impact a finding of probable cause and should not be considered by this Court. Appellant argues:

> [T]he surveillance captured [Dunion] walking up to a blue car and walking back two minutes later. No transaction was apparently observed. These facts are thus irrelevant.

Brief for Appellant at 7.

We caution Appellant not to evaluate particular parts of the Commonwealth's case in isolation; again, we are tasked with considering whether, ***under the totality of the circumstances,*** the officer's conclusion that they had probable cause to arrest Appellant was permissible. Contrary to Appellant's assertion, this earlier incident is not wholly irrelevant, it is a part of the totality of the evidence considered by the police in their

- 8 -

determination of probable cause. Here, after obtaining reports from residents of the neighborhood that drug sales were being conducted at that location, as well as the anonymous tip, officers properly sought to substantiate these reports through investigation. While performing surveillance, Officer Gross observed a dark Chevy sedan slowly creep by the residence, then turn the corner at the nearby intersection. Dunion then left the residence, walked in the direction of the dark Chevy sedan, and quickly — within two minutes — returned. While we agree with Appellant that this evidence, alone, does not support a conviction, it does add to the totality of the circumstances analysis.

Appellant also argues that the only other facts which establish probable cause to arrest him are that he was operating a vehicle that matched the general description provided by anonymous tipsters of someone involved in drug trafficking. Appellant cites three cases which he claims prove that probable cause was not established in his case.

Appellant first cites **Commonwealth v. Knotts**, 663 A.2d 216 (Pa. Super. 1995). There, an officer had received an anonymous tip that a silver or light blue Oldsmobile Cutlass Calais had been involved in an unsolved hit-and-run accident in the weeks before the stop, and that this Oldsmobile traveled a certain route every day between 8:00 and 9:00 A.M. **Knotts**, 663 A.2d at 218. The officer saw Knotts driving a silver Oldsmobile, did not observe any traffic violations, but signaled for him to stop. **Id.** The officer ultimately determined that Knotts's license was suspended for a prior driving under the influence conviction. **Id.**

On the appeal of his conviction, Knotts argued that his arrest occurred without probable cause. *Id.* After review, this Court agreed, finding that the informant's information was extremely general in nature, and the veracity and reliability of the information was not established as this was an utterly anonymous informant. *Id.* at 219. Specifically, this Court found that officer lacked "objective facts creating a reasonable suspicion that Knotts was *presently* involved in criminal activity" at the time of the stop, meaning that probable cause was lacking. *Id.*

Appellant also relies upon ***Commonwealth v. Valenzuela***, 597 A.2d 93 (Pa. Super. 1991), and ***Commonwealth v. Fassett***, 437 A.2d 1166 (Pa. 1981) for the proposition that a stop is improper if it is based solely upon the race of the driver of the vehicle and the make or color of the car. Appellant asserts that officers did not have a knowledge of his present involvement in criminal activity, and that the search for a black male in a dark blue Chevy is insufficient to support a finding of probable cause.

Again, however, Appellant misstates the totality of the evidence supporting his arrest. He was not arrested solely on the basis of being a black man in a dark blue Chevy. He was arrested because he was identified by Dunion as his drug dealer, along with the prior evidence related to Dunion. Appellant does not even mention the testimony from several officers that Dunion had informed them when they arrived to execute the search warrant that his drug dealer would be arriving imminently, and that the officers told Dunion to wait for the dealer and stand up to identify his arrival for the officers.

*See* N.T. at 30-36, 68, 90 (where Dunion informed officers inside the residence that his dealer was momentarily arriving with drugs, then signaling the dealer's arrival by standing up).

Dunion's statements that his dealer was on his way and his standing up to identify Appellant as that dealer cannot be disregarded out of hand by Appellant. "An informant's tip may constitute probable cause where … the informant himself participated in the criminal activity." *Commonwealth v. Luv*, 735 A.2d 87, 90 (Pa. 1999). Further, Dunion's tip was corroborated by Appellant's arrival shortly after the statement was made. *See Commonwealth v. Clark*, 28 A.3d 1284, 1288 (Pa. 2011) (finding that an informant's tip will constitute probable cause if there is some independent corroboration by police of the informant's information). The coordinated timing between Dunion's statement that his dealer was arriving, his conduct in waiting outside for the dealer to arrive, along with the arrival of the blue Chevy driven by Appellant, and Dunion standing up upon that arrival, all support a finding of probable cause for the arrest of Appellant.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/5/2026

- 11 -