## 75125. GOLDSBY v. THE STATE.

(367 SE2d 84)

McMurray, Presiding Judge.

Defendant was indicted for possession of cocaine with intent to distribute and possession of marijuana, in violation of the Georgia Controlled Substances Act. The evidence adduced at trial was as follows:

At about 1:30 p.m. on August 8, 1986, Special Agent Thomas Hill Davis, Jr. of the Georgia Bureau of Investigation interviewed a confidential informant who advised him that defendant, who is from Ft. Lauderdale, Florida, "was coming to . . . and had been in Claxton[, Georgia] for a couple of days and . . . had with him a quantity of rock cocaine that he was going to distribute in this area." The informant also told Agent Davis that defendant was driving a "bluish-gray" Oldsmobile Cutlass, "that a black female named . . . Ivory Hill and a black male named Charles Harrington would . . . be accompanying [defendant]," and that defendant "would either be staying with a black female known as Jackie Elaine Daniels or that [defendant] would be staying at one of the local motels." This informant had not previously provided information to Agent Davis; consequently, he sought to verify the tip through another police informant, who "had been used by [law enforcement officers] on several occasions to help catch some of the local drug dealers." At 2:30 that afternoon the second informant advised Agent Davis "that he had recently, within a few hours, talked with a fellow by the name of Ronnie Roberts . . . [who said] that [defendant] was in town and [Ronnie Roberts] showed this informant some rock cocaine . . . and he [Ronnie Roberts] told [the second informant] that he got [the rock cocaine] from [defendant]."

From the information provided by the first informant, a local law enforcement officer discovered that "Ivory Hill from Ft. Lauderdale[, Florida] was registered at the Miami Motel [in Claxton, Georgia] in Room 31." A "ride-by surveillance or a spot check" of this room was conducted "on [an] every-fifteen-minute basis" and, at about 4:00 that afternoon, a vehicle matching the description given by the first informant was observed parked in front of the motel room. Shortly thereafter, the vehicle was observed "leaving the Miami Motel traveling south on U. S. 301." The vehicle was stopped by law enforcement officers about 200 to 250 yards from the motel and the passengers, who included "[defendant] of Ft. Lauderdale, Florida, Ivory Hill of Ft. Lauderdale, Florida, Charles Harrington of Ft. Lauderdale, Florida; and [T. B., a minor], of Claxton, Georgia," were arrested and "patted down" for weapons. None were found. A search of the motel room revealed no weapons or contraband. Defendant and his companions were transported to the Evans County Sheriff's office where a

"strip-search" of the suspects revealed no contraband. However, after the suspects were searched, "a small piece" of rock cocaine was discovered falling to the floor from the area where defendant was seated and, after a struggle with defendant, officers discovered several pieces of rock cocaine concealed in defendant's mouth. Defendant was taken to the hospital for medical treatment since it was thought defendant might have swallowed "a lethal dose of cocaine." He was released from the hospital that evening. Three days later, on August 11, 1986, defendant made the following statement to Special Agent John B. Edwards of the Georgia Bureau of Investigation:

" 'I first came up to Georgia last year. I saw how much money I could make. You can make double your money selling rock in Georgia. My uncle, Leandre (phonetic) Williams, got me started in the cocaine business. I found that the people that sell drugs have all the money. I worked real hard, but I just couldn't save money. Something would always come up. So I got in the cocaine business. People would want to get to know me. The drug business is like that. The first time I came to Georgia on my own to deal my own cocaine was about five months ago. Me and Angelo Smith and Willie Shannon came up in a rental car. We bought — brought about an ounce and a half of coke. We had it all in rocks. We sold them around Claxton. Claxton's got a lot of users of rock. The second time I came up, Angelo and Shannon came up with me. I didn't know coke was in the car. This was the time Angelo got busted with the powder. About two or three weeks after that, I came up and brought 40 rocks. I came up again Friday[, August 8, 1986,] and brought 140 or 160 rocks. When I saw the police behind me, I put 60 rocks in my mouth. And that's all I remember. I had fronted Ronnie Roberts . . . 40 rocks. I fronted Alexander — last name unknown — some. I came up other times also but didn't bring cocaine. This is my statement of the truth as I know it, given freely and voluntarily to Special Agent Edwards. I have read all three pages.' "

A thorough search of defendant's vehicle revealed several marijuana seeds and a "small amount" of powdered cocaine on the "floorboard" of the back seat.

After the close of evidence, defendant's motion for directed verdict of acquittal was denied, the case was submitted to the jury and defendant was found guilty on both counts of the indictment. This appeal followed. *Held*:

1. Defendant first contends the trial court erred in admitting into evidence contraband seized pursuant to the warrantless arrest and search of his automobile. "Under Georgia law, an officer may arrest without a warrant 'if the offense is committed in his presence or within his immediate knowledge . . . or for other cause if there is likely to be failure of justice for want of a judicial officer to issue a

warrant.' OCGA § 17-4-20 (a). The constitutional validity of an arrest without a warrant depends 'upon whether, at the moment the arrest was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.' *Beck v. Ohio*, 379 U. S. 89, 91 (85 SC 223, 13 LE2d 142) (1964)." *Stola v. State*, 182 Ga. App. 502, 503 (1) (356 SE2d 222). In the case sub judice, defendant argues that there was no probable cause for his arrest because the first informant "had not provided information in the past [and] the information received from the first informant did not set forth sufficient facts from which a magistrate could independently determine the reliability of the information."

"The sufficiency of information obtained from an informant is not to be judged by any rigid test. Generally, probable cause is determined by the 'totality of the circumstances' surrounding (1) the basis of the informant's knowledge and (2) the informant's veracity or reliability. *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983). '(A) deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.' Id. at 233." *McKinney v. State*, 184 Ga. App. 607, 608 (1), 609 (362 SE2d 65). In the case sub judice, deficiencies in the basis of the first informant's knowledge and his veracity and reliability were reinforced by corroborating information provided by the second police informant, who had given police officers reliable information in the past, and by the details of the tip, which were corroborated by the personal observations of the investigating police officers shortly before defendant's arrest; i.e., that defendant would be driving a "bluish-gray" Oldsmobile Cutlass, "that a black female named . . . Ivory Hill [from Ft. Lauderdale, Florida] would . . . be accompanying [defendant]," and that defendant would be staying at "one of the local motels."

Moreover, other evidence adduced at the motion to suppress hearing showed that local law enforcement officers had information prior to defendant's arrest linking him to illegal drug activities in the area. More specifically, Agent Davis testified at the motion to suppress hearing that "earlier . . . in the year," defendant had telephonically contacted local police authorities and claimed $2,000 in cash and an automobile that had been seized pursuant to an arrest where the suspect was charged with possession of cocaine. Cocaine residue was found on the money, the vehicle had been rented by defendant and a credit card bearing defendant's name was discovered along with the $2,000 in the vehicle.

Standing alone, each of the above facts is insufficient to establish

probable cause for defendant's arrest. However, considering the facts cumulatively and considering the time at which the investigating police officers observed circumstances which corroborated the first informant's tip, it was unnecessary for the police officers to obtain a warrant for defendant's arrest as probable cause existed " 'to warrant a prudent man in believing that the [occupants of the 'bluish-gray' Oldsmobile Cutlass] had committed or [were] committing an offense.' [Cit.]" *Stola v. State*, 182 Ga. App. 502, 503 (1), supra.

" 'In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' *Brinegar v. United States*, 338 U. S. 160, 175 (69 SC 1302, 93 LE 1879) (1949). Under the 'totality of circumstances' test of *Illinois v. Gates*, supra, we find that the police [in the case sub judice] had probable cause on which to make the arrest. See *State v. Stephens*, 252 Ga. 181 (311 SE2d 823) (1984). The warrantless search of [defendant's] automobile as an incident to lawful arrest is controlled by *New York v. Belton*, 453 U. S. 454 (101 SC 2860, 69 LE2d 768) (1981). Therefore, admission into evidence of the [contraband] found as the result of the search of the automobile was not error. Also, we find no error in the admission into evidence of the cocaine found [concealed in defendant's mouth and in the area where defendant was seated while he was in police custody] . . . ." *Stola v. State*, 182 Ga. App. 502, 503 (1), 504, supra. This enumeration of error is without merit.

2. Defendant, in his second enumeration of error, urges that the trial court erred in admitting hearsay testimony of Agent Davis regarding the information received from the "two unnamed informants. . . ."

"OCGA § 24-3-2 (Code Ann. § 38-302) provides for an exception to the hearsay rule during the course of a legal investigation for 'information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives.' This rule applies to information received from confidential informants. *Bennett v. State*, 153 Ga. App. 21 (264 SE2d 516) (1980); *Burrell v. State*, 140 Ga. App. 900 (232 SE2d 172) (1977)." *Rogers v. State*, 167 Ga. App. 770, 771 (307 SE2d 685). In the case sub judice, Agent Davis' testimony concerning the specific statements made to him by the confidential informants was properly admitted to explain the police surveillance of Room 31 at the Miami Motel, the surveillance of the "bluish-gray" Oldsmobile Cutlass and the stop of the automobile in which defendant was riding. Accordingly, this enumeration of error is without merit. See *Spaulding v. State*, 169 Ga. App. 836 (1) (315 SE2d 48).

3. In his final enumeration of error, defendant contends that his confession, uncorroborated by other evidence, was insufficient to sup-

port his conviction for possession of cocaine with intent to distribute.

" 'A confession of guilt, freely and voluntarily made by the accused, is direct evidence of the highest character and sufficient to authorize a conviction when corroborated by proof of the corpus delicti. *Davis v. State*, 211 Ga. 76 (3) (84 SE2d 46); *Gilder v. State*, 219 Ga. 495 (2) (133 SE2d 861); *Thompkins v. State*, 222 Ga. 420 (1) (151 SE2d 153).' *Lowe v. State*, 225 Ga. 56 (165 SE2d 861)." *Fields v. State*, 232 Ga. 723 (2) (208 SE2d 822). In the case sub judice, not only did the circumstances surrounding defendant's arrest corroborate details of his confession but Special Agent John B. Edwards of the Georgia Bureau of Investigation testified at trial that rock cocaine found in defendant's mouth and in the area where defendant was seated while he was in police custody could be sold individually and that the larger pieces would sell in Evans County, Georgia for "$60-$80" and the smaller pieces would sell for "$20-$10." This was sufficient to corroborate defendant's confession and satisfy the standard of proof required under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). This enumeration of error is without merit.

*Judgment affirmed. Beasley, J., concurs in Divisions 1 and 3 and in the judgment. Sognier, J., concurs in the judgment only.*

DECIDED MARCH 3, 1988.

*Laura A. Marcantonio*, for appellant.
*Dupont K. Cheney, District Attorney, J. Thomas Durden, Assistant District Attorney*, for appellee.