### A97A0709. HARALSON v. THE STATE.
(488 SE2d 497)

JOHNSON, Judge.

Lee Haralson was charged with armed robbery. His first trial resulted in a hung jury. During the second trial, Haralson moved for a mistrial on the ground that the prosecutor impermissibly placed his character into issue when she elicited testimony intimating that he was a member of a street gang. The trial court granted his motion for mistrial but denied his subsequent plea of double jeopardy. Haralson appeals from the denial of his double jeopardy plea.

1. Haralson claims the trial court erred in failing to bar a retrial because the prosecutor intentionally provoked him into moving for a mistrial. We hold that the record supports the trial court's finding that the prosecutor's conduct was sufficient to justify the grant of a mistrial, but did not bar retrial.

"The general rule is that where a mistrial is granted at the behest of the defendant, a retrial is not barred by principles of double jeopardy unless the governmental conduct in question is intended to goad the defendant into moving for a mistrial." (Citations and punctuation omitted.) *Mobley v. State,* 262 Ga. 808, 809-810 (1) (426 SE2d 150) (1993). In determining whether retrial is barred, the court looks to the intent of the prosecutor in the misconduct; such intent is a fact question for the trial court to resolve. *Reed v. State,* 222 Ga. App. 376, 378 (1) (474 SE2d 264) (1996). Even where a prosecutor's conduct is sufficient to justify a grant of mistrial, the conduct nevertheless "does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the [d]ouble [j]eopardy [c]lause. . . . To authorize the grant of a plea of double jeopardy, the facts must warrant the conclusion that there was such an instigative intention." (Citations and punctuation omitted.) *Williams v. State,* 207 Ga. App. 124, 125 (427 SE2d 59) (1993).

The following events occurred during the second trial: A codefendant who had pleaded guilty to participating in the armed robberies for which Haralson was being tried was called as a witness for the state. This witness testified that he, Haralson, and two other men committed the crimes. On cross-examination, the witness admitted that he did not tell law enforcement officers about Haralson's involvement in the crimes until he decided to plead guilty. On redirect, the prosecutor asked the witness why he had not told the police about Haralson's involvement in the crimes earlier. The wit-

ness responded that Haralson had threatened to kill him if he did. The prosecutor then asked the witness why he believed Haralson would follow through with the threat; in response the witness stated: "I'm in a gang, right?" The prosecutor asked the witness to state the name of the gang. At that point, defense counsel objected, and the jury was sent out. Defense counsel argued that the inquiry into alleged threats and gang membership placed Haralson's character into issue. The court ruled that questions regarding the threats were permissible as being relevant to explain why the witness waited before telling police about Haralson, but instructed the prosecutor not to "go into anything about gangs." The court added that the prosecutor was not to pursue any matters "which might even arguably put the man's character in issue." The court told the prosecutor not to question the witness about his reasons for believing the threat would be carried out. The prosecutor responded that the gang membership questions should be permitted because the reason the witness hesitated to cooperate was that he and Haralson were in the same gang, and gang members will harm other members who "snitch" on each other. The prosecutor also argued that the relationship between the witness and the defendant is always relevant. After a brief recess, the court ruled that testimony of the threat would be allowed, but that testimony concerning gang membership would not be permitted. The prosecutor then asked the court if she could examine the witness concerning bandannas, the colors of bandannas, and whether Haralson wore a blue bandanna that night, since there was evidence that the perpetrators were wearing bandannas. The court ruled that the prosecutor could ask the witness who wore bandannas, but that that had "nothing to do with gangs." The court added that the question of why the men had bandannas relates to Haralson's character and implied that such an inquiry was not permissible.

When the trial resumed, the prosecutor asked the witness a series of questions regarding bandannas and gang membership. Specifically, she asked the witness whether he was a member of a gang, which gang, if he had a bandanna, whether two other co-defendants were gang members, whether they had bandannas, what color the bandannas were, and whether Haralson had a bandanna that night and what color it was. The witness' answers indicated that each of Haralson's co-defendants had a blue or black bandanna and was a member of a gang, and that Haralson had a blue bandanna. Defense counsel moved for a mistrial.

In the hearing on the motion for mistrial, the prosecutor defended her line of questioning by arguing that she did not ask if Haralson was in a gang. She explained that she asked who had bandannas and what colors they were because the information was relevant to other evidence identifying the perpetrators. The prosecutor

stated that she asked the witness about his and the other co-defendants' gang affiliations because she wanted to disclose this information reflecting on the credibility of the state's witnesses before the defense did. The prosecutor added that she had previously informed the court in a bench conference, which was not transcribed, that she intended to show that the co-defendants testifying for the state were members of a gang. She added that the court had given her permission to do so. As noted below, the trial court did not deny this. The prosecutor argued further that the court authorized her to ask about bandannas, and that no one told her she could not ask the questions about bandannas and other witnesses' gang membership "back to back." The court responded that the prosecutor "may be technically correct but [was] being disingenuous." In granting the motion for mistrial, the trial court acknowledged that it had authorized the prosecutor to inquire into the "status" of the state's witnesses and to question witnesses about the bandannas. However, the trial judge held that a mistrial was required because the order in which the questions were posed constituted character evidence.

At the subsequent hearing on the motion to bar retrial, the prosecutor pointed out that she sought, and understood that she had received, prior approval from the trial court to ask the questions at issue. After hearing argument from both sides, the trial court found that the questions at issue had been approved by the court before being posed to the witness and, though the sequence of the questions was problematic, concluded that the questioning did not amount to prosecutorial misconduct. Noting that it had considered the totality of circumstances surrounding the trial, the court found that the intention of the prosecutor was to convict Haralson, not to cause a mistrial.

The trial court's finding of fact that the prosecutor did not intend to cause a mistrial is supported by the record. The trial court did tell the prosecutor that she could inquire into the gang membership of the state's witnesses and the wearing of bandannas by the witness, Haralson and the co-defendants. The prosecutor asked permissible questions in a manner which had the same effect as asking the impermissible questions. We do not condone the prosecutor's conduct. While she may or may not have violated the letter of the trial court's instruction not to delve into issues of Haralson's gang membership or his character, she certainly violated the spirit of the ruling. As Judge Birdsong pointed out in *Oliver v. State*, 216 Ga. App. 76, 78 (453 SE2d 746) (1995), "there often exists a thin line between legitimate prosecutorial tactics and prosecutorial overreaching." Here the prosecutor deliberately chose to challenge that line. While the trial court in this case found that the prosecutor "skirted," rather than crossed, the line and did not intend to cause a mistrial, the court could have

just as well been authorized by the record to reach the opposite result. However, because there is evidence to support the trial court's finding of fact that the prosecutor lacked instigative intent, Haralson's plea in bar based upon double jeopardy grounds was properly denied. See generally *Sanders v. State*, 197 Ga. App. 867 (399 SE2d 734) (1990).

2. Haralson argues the trial court erred in failing to articulate the standard it used in determining there was no prosecutorial misconduct barring retrial. In the written order, the trial court denied the plea in bar "based upon the Court's finding that the State did not deliberately engage in any misconduct with the intent of securing a mistrial. *Reed v. State*, [Cit.]" As discussed above, in *Reed*, supra, this Court specifically set out the applicable double jeopardy standard as being the intent of the prosecutor in the misconduct, with intent being a fact question. Thus, the trial court did indicate the standard it applied in reaching its decision. Although Haralson complains that the trial court gave no indication as to how it evaluated the prosecutor's intent, he cites no authority requiring that the court include such information in the order. In any event, the court specifically stated that it considered the totality of circumstances surrounding the trial in reaching its decision. This enumeration is without merit.

*Judgment affirmed. Pope, P. J., and Blackburn, J., concur.*

DECIDED JULY 3, 1997 — 

*Viveca B. Famber*, for appellant.

*Lewis R. Slaton, District Attorney, Carla E. Young, Kirby Clements, Jr., Assistant District Attorneys*, for appellee.