S98A0990. WEEMS v. THE STATE.
(501 SE2d 806)

BENHAM, Chief Justice.

Daniel Tobias Crowell, Sr., left his College Park apartment at 9:30 p.m. on August 24, 1994, to return a rented videotape. He was shot to death in an Atlanta parking lot 90 minutes later. Appellant Richard Weems was found guilty of malice murder, felony murder, and aggravated assault in connection with Crowell's death, and appeals the judgment entered on the jury's verdicts.[1]

---

[1] Appellant was arrested seven weeks after the crime and was indicted on July 14, 1995. A mistrial was ordered in appellant's first trial on the indictment. This trial commenced December 12, 1995, and concluded with the jury's return of its guilty verdicts on December 13. The trial court merged the aggravated assault and felony murder convictions into the malice murder conviction and sentenced appellant to life imprisonment. Appellant's motion for new trial, filed January 5, 1996, was denied December 18, 1997. The trial court granted appellant an out-of-time appeal on January 20, 1998, and a Notice of Appeal was filed that day. The record was docketed in this Court on March 25, 1998, and oral argument was heard June 9, 1998.

1. According to testimony presented at trial, Crowell met a friend at the shopping center where the videotape was returned, and the two decided to call on a friend of Crowell who lived in Atlanta. The three men visited while standing in a parking lot next to Crowell's car. Around 11:00 p.m., three other men approached the trio, and one man pulled out a handgun and shot Crowell twice. Crowell was struck in the head and in the stomach, and the forensic pathologist who performed the autopsy testified that death resulted from the combined effect of the two gunshot wounds. The Georgia State Crime Lab's firearms expert testified that the two bullets removed from the victim were fired from a .38 caliber handgun or a .357 Magnum. Some time after the shooting, the friend Crowell was visiting told police he knew the shooter as "Fernando," a man who lived nearby. At trial the witness identified appellant Richard Weems as "Fernando." The man who met the victim at the shopping center and accompanied him to Atlanta also identified the defendant as the man who shot Crowell, and testified that Weems was armed with a .38 handgun or a .357 Magnum. The evidence was sufficient to authorize a rational trier of fact to find that appellant was guilty beyond a reasonable doubt of the malice murder of the victim. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The investigating detective testified at trial that a police canvass of the area where the shooting took place resulted in police learning "that a possible suspect was Fernando." When defense counsel lodged a hearsay objection to the testimony, the trial court ruled the testimony admissible because it explained the officer's conduct. See OCGA § 24-3-2.

OCGA § 24-3-2 authorizes the admission into evidence as original evidence "information, conversations, letters and replies, and similar evidence . . . to explain conduct and ascertain motives. . . ." In *Momon v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982), this Court limited admission of such evidence to situations in which "the conduct and motives of the actor are matters concerning which the truth must be found (i.e., are relevant to the issues on trial). . . ." This Court reiterated the limitation on the admission of evidence pursuant to OCGA § 24-3-2 in *Teague v. State*, 252 Ga. 534, 536 (314 SE2d 910) (1984) when it observed that

> only in rare instances will the "conduct" of an investigating officer need to be "explained," as in practically every case, the motive, intent, or state of mind of such an officer will not be "matters concerning which the truth must be found." At heart, a criminal prosecution is designed to find the truth of what a defendant did, and, on occasion, of why he did it. It is most unusual that a prosecution will properly concern itself with *why* an investigating officer did something.

Stated another way, unless it is the rare instance in which the conduct of an investigating officer is a matter concerning which the truth must be found, it is error to permit an investigating officer to testify, under the guise of explaining the officer's conduct, to what other persons related to the officer during the investigation. *Render v. State*, 267 Ga. 848 (2) (483 SE2d 570) (1997); *Cowards v. State*, 266 Ga. 191 (3) (a) (465 SE2d 677) (1996); *Morris v. State*, 264 Ga. 823 (2) (452 SE2d 100) (1995); *Nelson v. State*, 262 Ga. 763 (3) (426 SE2d 357) (1993); *Howard v. State*, 262 Ga. 78 (5) (414 SE2d 198) (1992). The case before us is not one of the "rare instances" where the conduct of the investigating officer was a relevant issue. Compare *Greene v. State*, 266 Ga. 439 (25) (469 SE2d 129) (1996). Nor does police conduct become an issue in need of explanation by means of hearsay testimony in a case where an appellate court suggests that the jury may find police behavior so inexplicable as to cast doubt on the prosecution (*Ross v. State*, 210 Ga. App. 455 (1) (436 SE2d 496) (1993)), or where a confidential informant has provided information which initiates an investigation. *Copeland v. State*, 228 Ga. App. 734 (2) (492 SE2d 723) (1997).[2] While it was error to admit the detective's testimony concerning the results of the police canvassing the neighborhood, that error cannot be deemed harmful as it is highly probable that the testimony did not contribute to the verdict, in light of the eyewitness identification of appellant as the shooter. *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976).

3. The investigating detective first questioned appellant about the homicide seven weeks after the shooting. The detective testified that appellant "appeared at that time to be high" and that appellant told him appellant had been smoking marijuana-laced cigars. Appellant objected to the admission of the detective's testimony on the ground that it impermissibly brought the defendant's character into issue, in violation of OCGA § 24-9-20. In a pre-trial hearing on appellant's motion in limine, the trial court ruled that "anything that the defendant said is relevant" and, at trial, ruled that the detective was authorized to testify as to what he saw the day he interviewed appellant.[3]

---

[2] In *Copeland*, the Court of Appeals cited *Goldsby v. State*, 186 Ga. App. 180 (2) (367 SE2d 84) (1988), in support of its holding that an officer's testimony relating information given him by a confidential informant who did not testify fell "under a well-established exception to the rule against hearsay" because it explained the officer's conduct in pursuing the investigation against the defendant. All of the cases cited by *Goldsby* pre-date this Court's decisions in *Momon* and *Teague* and are no longer viable in light of the *Momon-Teague* decisions which overruled them implicitly. Furthermore, since two members of the three-judge panel deciding *Goldsby* did not endorse Division 2 of that opinion, it is physical precedent only. Court of Appeals Rule 33 (a).

[3] Because the trial court had denied appellant's motion in limine on these evidentiary points, there was no need for appellant to reiterate his objections to the admission of the

"[N]o evidence of general bad character or prior convictions shall be admissible [in a criminal case] unless and until the defendant shall have first put his character in issue." OCGA § 24-9-20 (b). Regardless of the fact that the defendant may have voluntarily made the statements at issue, since they were neither relevant nor admissible for impeachment or for any other proper purpose, the only purpose for their admission was to show appellant's bad character, and such evidence is inadmissible since appellant had not made his character an issue. *Duke v. State*, 256 Ga. 671 (1) (352 SE2d 561) (1987). The admission of the improper evidence does not require reversal, however. In light of the identification of appellant as the perpetrator by two eyewitnesses, it is highly probable that the detective's testimony that appellant was using marijuana seven weeks later did not contribute to the verdict. *Johnson v. State*, supra, 238 Ga. 59.

4. Lastly, appellant contends that his retrial following the grant of his motion for mistrial in his first trial violated the double jeopardy provisions of the state and federal constitutions.[4] Generally, where a mistrial is granted on the defendant's motion, double jeopardy does not bar a retrial unless it is established that the State intended to "goad" the defendant into moving for a mistrial to avoid a reversal or to obtain a more favorable chance of a guilty verdict on retrial. *Williams v. State*, 268 Ga. 488, 489 (491 SE2d 377) (1997); *Mobley v. State*, 262 Ga. 808 (2) (426 SE2d 150) (1993). In the case at bar, the trial court found no misconduct on the part of the State, and that finding is supported by the record, making the trial court's denial of the motion to bar retrial proper. *Haralson v. State*, 227 Ga. App. 118 (1) (488 SE2d 497) (1997). Appellant contends that the conduct of the seasoned testifying detective provides the required "goading" and should be imputed to the prosecution. Even if were we inclined to agree with the assertion that the detective intentionally framed his testimony so as to goad the defendant into seeking a mistrial, we decline to overrule *State v. Maddox*, 185 Ga. App. 674 (365 SE2d 516) (1988) and *State v. Barnes*, 222 Ga. App. 875 (476 SE2d 646) (1996), and impute his instigative intent to the prosecutor.

*Judgment affirmed. All the Justices concur.*

---

contested evidence at trial. *Kilgore v. State*, 247 Ga. 70 (274 SE2d 332) (1981); *Harley-Davidson Motor Co. v. Daniel*, 244 Ga. 284 (1) (260 SE2d 20) (1979).

[4] Appellant's first trial ended in a mistrial after the investigating detective testified that appellant had refused to make a statement. See *State v. Johnson*, 267 Ga. 305 (477 SE2d 579) (1996), an appeal by the State from the trial court's grant of a motion to dismiss the charges against appellant's co-defendant on double jeopardy grounds. While the appellate record in Weems' case does not contain an order denying appellant's motion to bar retrial on double jeopardy grounds, the transcript of the trial court's verbal ruling and finding of fact is contained in the record sent by the lower court in *State v. Johnson*, supra.

DECIDED JULY 6, 1998.

*Ellis W. Peetluk,* for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Peggy A. Katz, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General,* for appellee.