## A99A1618. SPRADLEY v. THE STATE.
(529 SE2d 647)

ANDREWS, Presiding Judge.

Bobby Spradley appeals from the judgment entered after a jury found him guilty of two counts of armed robbery, possession of a firearm during the commission of a felony, possession of a controlled substance, obstruction, failure to stop, no license, reckless driving, and fleeing and eluding. Spradley claims the trial court erred in denying his plea in bar on the grounds of former jeopardy and in its charge to the jury. We find no reversible error and affirm.

This case arose when an anonymous caller reported to 911 that she heard a shot fired and saw two men in a white Chevette or Chevelle in front of her house, one of whom had a gun. Officers responding to the call saw a white Chevelle pull into a gas station and followed. When police approached the car after it stopped, Spradley, who was driving, sped off. Officers chased the car, and it ended up in a vacant lot. Spradley and co-defendant Shaun Frazier jumped out and ran. After a brief chase, police caught both men and arrested them. Police found a wallet belonging to Tracy Lundy in the car and also found cocaine on Spradley, who admitted that it was his.

The officer called Lundy who said that he and his brother-in-law had been robbed earlier in the evening but decided not to call the police. Both Lundy and his brother-in-law identified Spradley and Frazier as the men who robbed them.

At the time of the first trial, the 911 caller was still refusing to testify, and Spradley filed a motion in limine to exclude the content of the 911 call. Before the start of trial, the judge held a hearing on the motion and then granted it, stating: "Right now, I am sustaining the motion in limine as to the content of anything that's in that report." The prosecutor then said: "Your Honor, I would like to be clear on your ruling. We would like to have Detective Best testify that he was looking for a white Chevelle or Chevette as a result of a dis-

patch that he got." Defense counsel objected, and the trial court stated: "I'm going to allow it. . . . I will allow him to testify that he was instructed to look out for a white Chevelle."

The jury was called in, and the prosecutor began her opening statement. During the statement, the prosecutor said: "And while they were on this Olympic detail, they got a dispatch on the radio, telling them to look out for a white Chevelle or white Chevette that was involved in a 'shots fired' call."

Defense counsel objected to the prosecutor's statement that police were responding to a "shots fired" call and moved for a mistrial, which the court granted. Spradley then filed a plea in bar, moving the court to dismiss the indictment on grounds of double jeopardy. The court denied the motion, and Spradley was tried and found guilty on all counts. Spradley now appeals, claiming it was error not to grant his plea of former jeopardy.

1. The primary purpose of the Double Jeopardy Clause is to prohibit the retrial of a criminal defendant where the prosecution has, at the initial trial, produced insufficient evidence to sustain a conviction. See, e.g., *Burks v. United States*, 437 U. S. 1 (98 SC 2141, 57 LE2d 1) (1978); *Williams v. State*, 258 Ga. 305, 311 (369 SE2d 232) (1988). "The general rule is that retrial of the defendant is not barred where reversal of the conviction results from trial error rather than evidentiary insufficiency." Id. In general when a defendant makes a motion for a mistrial he waives any claim of double jeopardy. Id. But, where the prosecutor has goaded the defense into making a motion for a mistrial in order for the prosecution to avoid reversal of the conviction because of prosecutorial or judicial error or to otherwise obtain a more favorable chance for a guilty verdict on retrial, the Double Jeopardy Clause will stand as a bar to retrial. Id. See also *Oregon v. Kennedy*, 456 U. S. 667, 676 (102 SC 2083, 2089, 72 LE2d 416) (1982). The Supreme Court of Georgia has adopted the test set out in *Oregon*, supra. *Beck v. State*, 261 Ga. 826 (412 SE2d 530) (1992). The inquiry is whether the prosecutor intended to goad the defendant into moving for a mistrial and thus terminate the trial. What is critical is the objective of the prosecutor's conduct. Unless a prosecutor is trying to abort the trial, his or her misconduct will not prohibit a retrial. *Oregon*, supra; *Mosley v. State*, 230 Ga. App. 890, 891 (497 SE2d 608) (1998). The question of whether the prosecutor intended to goad the defendant into moving for a mistrial is a question of fact for the trial court to resolve. *Ward v. State*, 230 Ga. App. 581, 582 (497 SE2d 65) (1998). The Supreme Court, in concluding that a standard that examines the intent of the prosecutor has some difficulties but is still manageable, stated: "It merely calls for the court to make a finding of fact. Inferring the existence or nonexistence of intent from objective facts and circumstances is a familiar

process in our criminal justice system." *Oregon*, supra at 675.

Spradley claims the prosecutor intended to goad him into moving for a mistrial in order to obtain a more favorable chance for a guilty verdict on retrial. He points out that the court had just refused to admit the State's similar transaction evidence and had also refused to allow the State to describe the 911 call. In addition, when the case was retried at a later date, the State's first three witnesses were the woman who made the 911 call, the dispatcher who took the call and the officer in charge of the 911 tapes. At the time of the first trial, the anonymous 911 caller had not agreed to testify, and therefore, none of this evidence could have been introduced. Thus, Spradley argues the prosecutor deliberately ignored the court's instruction not to mention the substance of the 911 call in order to force a motion for mistrial because she thought she had a better chance for a guilty verdict on retrial.

The prosecutor said she had not deliberately disobeyed the court's order but "thought that I could address it in that manner." The prosecutor also asked if they could strike another jury immediately. At the time, the trial court stated that it did not believe the prosecutor's mistake was deliberate. At the hearing on the plea in bar, the prosecutor again stated that she did not intend to goad the defense into requesting a mistrial and that she was prepared to go to trial.

Spradley argues that this case is similar to *Wilson v. State*, 233 Ga. App. 327 (503 SE2d 924) (1998). In *Wilson*, the prosecutor was cross-examining the defendant and asked, " 'Mr. Wilson, did you try to negotiate a nolo contendere plea in this charge?' " Id. at 330. In that instance, this Court said that prosecutors are generally too well trained and knowledgeable to ask that question and, therefore, the prosecutor must have intended the mistrial.

This case, however, more closely resembles *Haralson v. State*, 227 Ga. App. 118 (488 SE2d 497) (1997), in which the trial court instructed the prosecutor not to elicit any testimony about the defendant's gang membership. Because there was evidence that the robbers wore a certain color bandanna, the prosecutor asked if she could question a witness about what color bandannas the robbers were wearing. The court said she could, and she then proceeded to question a co-defendant about wearing bandannas and gang membership: whether the other co-defendants were members of gangs, what color bandannas they wore and what color bandanna the defendant wore. The trial court granted a mistrial, and after the subsequent hearing to bar retrial, the trial court found that the prosecutor's intention was to convict Haralson, not to cause a mistrial. Id. at 120. This Court concluded that the trial court would have been authorized to reach the opposite result, but because there was evi-

dence to support the trial court's finding of fact, the defendant's plea in bar was properly denied. Id. at 121.

Likewise, in this case, the trial court could have reached the opposite result. But, there was evidence that the prosecutor did not intend to cause a mistrial in order to gain a delay and was prepared to try the case again immediately. Therefore, because the trial court's finding of fact was authorized by the evidence in the record, we conclude that the trial court properly denied Spradley's plea in bar on the grounds of double jeopardy. *Haralson*, supra at 121.

2. Spradley also argues that the trial court erred in charging the jury and in answering a jury question on unanimous verdicts. During its charge, the court instructed the jury on the elements of armed robbery and the lesser included offense of robbery and the requirement that the verdict be unanimous and gave an explanation of the verdict form. After the charge, the jury sent out a question during deliberations, and the court responded as follows:

> Let me read the question for the record and then I'll answer it. The question is, do we have to be unanimous on armed robbery or robbery to not be a hung jury? And the answer is, you have to be unanimous, whatever your verdict is, which way it goes on anything, it has to be unanimous, that is, agreed to by all of you. Does that answer the question?

Spradley argues that the charge and the answer to the jury's question somehow required the jury to first reach a unanimous verdict on the greater offense before it could consider the lesser included offense. We disagree.

Spradley cites *Cantrell v. State*, 266 Ga. 700 (469 SE2d 660) (1996) and *Kunselman v. State*, 232 Ga. App. 323 (501 SE2d 834) (1998) as authority for this claim of error. But, these cases are not on point. In *Cantrell*, the trial court instructed the jury that it must first consider the greater offense of possession with intent to distribute before it could consider the lesser included offense of possession. Id. Likewise, in *Kunselman*, the trial court instructed the jury that it must first find the defendant not guilty of burglary before it could consider the lesser included offense of criminal trespass. Id. at 324. Here, the trial court gave no such instruction and never specified any order that must be followed by the jury in their deliberations. This claim of error is without merit.

*Judgment affirmed. Ruffin and Ellington, JJ., concur.*

DECIDED FEBRUARY 11, 2000 —
RECONSIDERATION DISMISSED JUNE 14, 2000.

*Jackson & Schiavone, Michael G. Schiavone, Steven L. Sparger,* for appellant.

*Spencer Lawton, Jr., District Attorney, Lori L. Canfield, Assistant District Attorney,* for appellee.