### A00A0718. TREW v. THE STATE.
(534 SE2d 804)

RUFFIN, Judge.
    A jury found Jimmy Trew guilty of child molestation and enticing a child for indecent purposes. The trial court merged the two offenses and sentenced Trew on the child molestation conviction. Trew appeals, raising several issues. For reasons discussed below, we affirm.
    1. Trew contends the evidence was insufficient to support his conviction of child molestation. This contention is without merit.
    Bobby John and Lorraine Whitaker ran a child care business out of their home in Ellijay. Trew, who lived nearby, would often give four-wheeler rides to children who were staying with the Whitakers. On April 13, 1998, Trew gave a ride to three children: B., his wife's four-year-old granddaughter; Steven, his fifteen- or sixteen-year-old stepson, who was blind; and four-year-old Austin. B. sat in front of Trew, while Austin and Steven sat behind him. Bobby Whitaker testified that this seating arrangement was unusual, in that Austin usually rode in front because he had a slight handicap. Whitaker testified that he became somewhat concerned because the ride took "longer than normal." After about ten minutes, however, Trew returned with the children.
    B.'s mother, Angela McClure, testified that later that day, B. told her that Trew (whom she referred to as "Pa") had tickled her on her "pee-pee," meaning her vaginal area. Bobby Whitaker testified that, after he heard what B. had said, he asked her, "What happened to you and [Trew] on the four wheeler?" According to Whitaker, B. pointed to her groin and said that Trew had touched her. Whitaker asked, "Well, was he just tickling you and happened to hit that?", and she said, "No. . . . He put his hand under my panties." She told Whitaker that Trew "told me not to tell nobody. . . . If I did, me and him would get in big trouble."
    Whitaker testified that, a week or two after the incident, he listened in on a phone conversation between Trew and his wife, Donna Patterson, who is Whitaker's sister. Whitaker said that Patterson had asked him to listen in on the conversation if Trew called. During the conversation, Patterson asked, "What about [B.]?" Trew responded, "I hope to God she forgets what happened that day," and said that he had been praying for forgiveness.

B., who was five years old at the time of trial, testified that Trew tickled her on her private parts, under her panties. She was shown a diagram of a young girl and asked to show where Trew tickled her, and indicated the groin area.

Stacey Nicholson, the chief investigator for the Gilmer County Sheriff's Office, testified that he interviewed B. the evening of the incident, April 13. According to Nicholson, B. told him that Trew tickled her in her genital area, under her panties. Nicholson testified that B. demonstrated how the tickling occurred by moving her finger back and forth. B. said that Trew "told me not to tell anybody or we'd both get into trouble."

Later that evening, after Trew was arrested, he gave a statement to Nicholson about the incident. According to Nicholson, Trew said that he never touched B.'s vagina, and that the only time his hand could have come close to her vagina was when he was shifting gears. Trew told Nicholson that B. had misconstrued his comment about not telling anybody. Trew claimed that he actually said, "If I don't get you back to Granny's to eat supper we'll be in trouble."

About a week later, Nicholson conducted a second interview with B., which was recorded on videotape. The videotape was introduced into evidence and played for the jury.[1]

Trew testified that B. "always loved for me to try to tickle her" during four-wheeler rides. He said that, on the occasion in question, he was tickling B.'s belly with his left hand when she "shoved back," causing his hand to go down her pants. According to Trew,

> [w]hen I was tickling her and she pushed back my hand went right down the front [of her pants]. . . . She had pushed back with her feet with her legs . . . [a]nd that's what caused my hand to go down in front of her pants. . . . I didn't feel nothin'. I mean, it happened in a split second.

Trew denied that his hand went all the way down to B.'s vagina. He admitted that, when he was interviewed by Nicholson, he knew that his hands had gone down B.'s pants, but said he did not tell this to Nicholson because he was scared. Instead, he told Nicholson that the only time his hand could have gotten close to her vagina was while he was changing gears. Trew testified that B.'s blue jeans were "pretty loose." B.'s mother, however, testified that the jeans were "very snug on her."

Viewed in the light most favorable to support the verdict, this

---

[1] The videotape is not included in the record on appeal. Nicholson testified, however, that the videotape was consistent with B.'s earlier statement and her in-court testimony, and Trew does not contend otherwise.

evidence was sufficient for the jury to find Trew guilty of child molestation. Although Trew claims that any touching was accidental and that there was "no conflict" between his testimony and B.'s, the jury was authorized to conclude otherwise. Trew's claim that the touching lasted a "split second" was contradicted by B.'s claim that he tickled her private parts by moving his finger back and forth. Trew's claim that his hand accidentally slipped down B.'s pants is contradicted by testimony that the pants were snug fitting. Furthermore, Trew's account of the accidental touching is inconsistent with his original statement to Nicholson. Under all of the circumstances, the jury was authorized to find B.'s version of events more credible than Trew's account.[2]

2. Trew contends that the evidence was insufficient to support his conviction of enticing a child for indecent purposes. Although the jury returned a guilty verdict on this count, the trial court did not enter a judgment of conviction on this count, but merged it with the conviction for child molestation. Therefore, it is unnecessary to consider whether the evidence supported the jury's verdict.[3]

3. Trew argues that the trial court erroneously admitted hearsay evidence under the child hearsay statute, OCGA § 24-3-16. He asserts that hearsay evidence cannot be admitted under the statute unless the child victim's veracity is at issue or the child is unresponsive. However, the statute places no such limitation on the admissibility of evidence, but provides that:

> [a] statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another . . . is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.[4]

Thus, the only limits set forth in the statute are that the child be "available to testify" and that the circumstances of the statement show "sufficient indicia of reliability." We have held that the statute "actually contemplates testimony . . . from both the child and those witnessing the child's later reaction, even if the hearsay may be 'bolstering.' . . . Any 'bolstering' can be explored by defendant in cross-

---

[2] See *Blackwell v. State*, 229 Ga. App. 452, 454-455 (3) (494 SE2d 269) (1997); *Jackson v. State*, 213 Ga. App. 420, 421 (444 SE2d 854) (1994).

[3] See *Wallin v. State*, 270 Ga. 889, 890 (514 SE2d 828) (1999); *Carter v. State*, 269 Ga. 420, 422 (2) (499 SE2d 63) (1998).

[4] OCGA § 24-3-16.

examination."[5] Because the child was clearly available to testify, and Trew does not challenge the existence of indicia of reliability, this enumeration is without merit.[6]

4. Finally, Trew asserts that the trial court "erred in instructing the jury not to consider sexual battery as a lesser included offense of child molestation until after they had acquitted [him] of the greater offense." The court's instruction was as follows:

> If you do not believe beyond a reasonable doubt that the Defendant is guilty of count one child molestation but do believe beyond a reasonable doubt that the Defendant is guilty of sexual battery then you would be authorized to find the Defendant guilty of sexual battery.

Contrary to Trew's assertion, this language did not require that the jury first acquit Trew of child molestation before considering the lesser included offense of sexual battery. Accordingly, this enumeration is without merit.[7]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED MAY 18, 2000.

*Michael R. McCarthy*, for appellant.
*Roger G. Queen, District Attorney, William B. Britt, Assistant District Attorney*, for appellee.

---

[5] *Rayburn v. State*, 194 Ga. App. 676, 677 (3) (391 SE2d 780) (1990).

[6] *Woodard v. State*, 269 Ga. 317 (496 SE2d 896) (1998), cited by Trew, does not change this result. In *Woodard*, the Supreme Court held that the statute was unconstitutional to the extent that it allowed hearsay testimony of a child witness other than the victim. Id. at 321-323 (3). The Court noted, however, that "[t]here are several compelling reasons for allowing a child *victim*'s hearsay statements to come into evidence." (Punctuation omitted; emphasis supplied.) Id. at 323 (3).

[7] See *Turner v. State*, 241 Ga. App. 431, 433 (2) (a) (526 SE2d 95) (2000) (construing nearly identical language); *Spradley v. State*, 242 Ga. App. 340, 343 (2) (529 SE2d 647) (2000). Compare *Cantrell v. State*, 266 Ga. 700 (469 SE2d 660) (1996); *Kunselman v. State*, 232 Ga. App. 323, 324-325 (1) (501 SE2d 834) (1998).