## A04A1042. BROWN v. THE STATE.
(600 SE2d 774)

PHIPPS, Judge.

A jury found Elizabeth Brown guilty of five counts of child molestation. She appeals, arguing that the evidence was insufficient to support the verdict and that the trial court erred by (1) denying her motion for in camera inspection of certain juvenile court records, (2) admitting statements that improperly implicated her character, (3) allowing the prosecutor and a state's witness to use the term "sexual abuse," and (4) allowing a state's witness to testify in rebuttal in violation of the rule of sequestration. Because these arguments lack merit, we affirm.

1. On appeal from a criminal conviction, the defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to the guilty verdict. We do not weigh the evidence, judge the credibility of the witnesses, or resolve conflicts in trial testimony; rather, we determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[1]

The victim, J. F., was 12 years old at the time of trial. He testified that when he was ten years old, he was living in a trailer with his mother (Brown) and her boyfriend (Frederick Hampton), as well as five other people. He testified that one day while he was alone with Brown in a room he called the "office," she began talking about sex. She touched his "front private parts," grabbed his wrist and placed

[1] *Mann v. State*, 244 Ga. App. 756, 757 (1) (536 SE2d 608) (2000); see also *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

his hand on "her chest private parts." Then she "made [him] lay down, and she sat on top of [him]," straddled him, and "moved around a little bit."

J. F. also testified that Brown once showed him a "rented" movie of people "having sex." While J. F. was watching the movie, Brown and Hampton were lying in bed in the same room "kissing and stuff." On another occasion, Brown showed him a "homemade" movie depicting Hampton and her "having sex." Brown told J. F. that she was showing him the movies "to teach [him] about sex."

Nicki Corbett, a social services supervisor at the Georgia Department of Human Resources Division of Family & Children Services (DFCS), testified that she, another DFCS worker, and a police officer spoke with J. F. She testified that J. F. told her "he had received some bad touches from his mother." She gave J. F. a "gingerbread drawing" and he showed her "what body parts had touched the other body parts, on who." According to Corbett, J. F. told her that his mother had "sat on top of his penis" in the office, with her private parts touching his. J. F. also told her that Brown and Hampton had shown him pornographic movies in an effort to teach him about sex, and "[d]uring some of these viewings, [they] started acting out whatever was on the videos in front of [J. F.]"

Curt Holmes, a psychologist, testified that he interviewed J. F., who reported that his mother had taken him into the office of their trailer, touched his genitals, "then straddled him and rubbed herself, her genital area[,] against him." Holmes also testified that J. F. had told him that Brown and Hampton had shown him videotapes depicting various sexual acts. Holmes testified that based on his evaluation of J. F., "the findings were consistent with possible sexual abuse."

Brian Clark, a friend of Hampton's who lived in the trailer at the time, testified that he had made a videotape of Hampton, Brown, another friend, and himself engaging in sexual activity. According to Clark, the other friend burned the videotape at Hampton's request when the police began looking for it.

Wayne White, an investigator for the Georgia Bureau of Investigation, testified that he spoke with Brown after her arrest. White testified that he read Brown her *Miranda* rights and she signed a waiver. He then interviewed her, and she gave a statement that he wrote down and she signed. In the statement, which White read to the jury, Brown admitted that she had put J. F.'s hand on her vagina and had "sat on top of him" in their home office. She also admitted that J. F. had seen both a rented pornographic video and a homemade one showing her having intercourse and oral sex with Hampton.

Brown took the stand in her own defense, denying that she had ever shown pornographic material to J. F. or touched him improperly.

She also denied making the statement that White had read to the jury. She claimed that she had been hysterical during the interview and had signed the statement, without reading it, merely to end the interview.

The jury found Brown guilty of five counts of child molestation for (1) showing J. F. a sexually oriented videotape, (2) placing his hand on her vaginal area, (3) placing his hand on her breasts, (4) placing her hand on his penis, and (5) placing her vaginal area on his penis.

Brown contends that the evidence was insufficient to support the verdict because much of it was hearsay repetition of J. F.'s out-of-court statements. The Child Hearsay Statute, however, provides that

> [a] statement made by a child under the age of 14 years describing any act of sexual contact . . . performed with or on the child by another or performed with or on another in the presence of the child is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.[2]

Brown fails to show — or even to argue — that the hearsay statements in question failed to satisfy the above criteria.

Brown also complains that J. F.'s testimony was "confusing" and inconsistent. Even if this were true, confusion or inconsistency in a witness's testimony does not automatically discredit that testimony because it is the jury's role "to determine to what evidence it gives credence. It is not for us to determine or question how the jury resolved any apparent conflicts or uncertainties in the evidence."[3]

Finally, Brown points out that the only eyewitness testimony about the molestation came from J. F. But the testimony of the victim alone can authorize the jury to find a defendant guilty of child molestation.[4] In this case, J. F.'s testimony was corroborated by multiple other witnesses, as well as by his mother's statement to the police.

In sum, we find that the evidence was more than sufficient to support the conviction.[5]

2. Brown filed pre-trial motions seeking in camera inspection of records from proceedings in the juvenile courts of Towns County and Putnam County that involved her children and Hampton's daughter.

---

[2] OCGA § 24-3-16; see also *Trew v. State*, 244 Ga. App. 76, 78 (3) (534 SE2d 804) (2000).

[3] (Citation omitted.) *Brownlow v. State*, 248 Ga. App. 366, 367 (1) (544 SE2d 472) (2001).

[4] *Foster v. State*, 254 Ga. App. 255 (1) (562 SE2d 191) (2002).

[5] See id.; *Jackson v. Virginia*, supra.

The trial court (the Superior Court of Towns County) subpoenaed records of juvenile proceedings in Towns County and obtained records from both the Towns County and Putnam County DFCS offices, but it ruled that it lacked jurisdiction to order the Juvenile Court of Putnam County — a different court in a different county — to produce any records. Brown argues that the juvenile court records from Putnam County might have included information favorable to her defense and that the trial court did have the authority to order the disclosure of the records.

Brown cites no authority for the proposition that the court had such power. She relies on *Mangum v. State*,[6] but that case does not help her argument. In *Mangum*, a jury found the defendant guilty of felony murder and armed robbery based largely on the testimony of juvenile witnesses. The defense sought to impeach those witnesses with evidence of their criminal records and pending charges, but the trial court refused to allow discovery of the witnesses' juvenile court records on the grounds that those records were confidential.[7] Our Supreme Court ruled that the Sixth Amendment confrontation clause requires that the defendant be allowed access to such records for impeachment purposes.[8] The court did *not* hold that a superior court has the authority to order a juvenile court in a different county to produce records. In fact, *Mangum* did not even address this jurisdictional question.

Moreover, Brown has failed to show that she was prejudiced by not having access to the Putnam County juvenile court records. She has not shown that those records contained any material, exculpatory information, and her belief that something in the records *might* have been exculpatory is insufficient to show error.[9]

3. Before trial, Brown moved in limine to exclude any evidence suggesting that DFCS had investigated her before the occurrence of the alleged acts for which she was being tried. She argued that such evidence would impermissibly put her character in issue. The trial court conditionally granted her motion, subject to Brown putting her character in issue. Brown complains that two state witnesses made statements in violation of the court's order, requiring a mistrial.

In the first statement, Corbett, the DFCS social services worker, testified, "I was somewhat familiar with [J. F.] with some previous dealings with [him]." The court sustained defense counsel's objection

---

[6] 274 Ga. 573 (555 SE2d 451) (2001).

[7] Id. at 576 (2).

[8] Id.

[9] See *Pollard v. State*, 260 Ga. App. 540, 544-545 (580 SE2d 337) (2003).

to this testimony and instructed Corbett, outside the presence of the jury, not to talk about "stuff in the past."

In the second statement, the other DFCS worker present during Corbett's interview of J. F. was asked whether the boy had made a particular comment. She responded: "Perhaps it wasn't in this interview. I know that there [had] been interviews with other counties, and that may —." Defense counsel objected, and the court told the witness to testify about what she had personally heard.

In neither case did defense counsel move for a mistrial. Therefore, Brown has waived any argument on appeal that the court should have granted a mistrial.[10]

4. Before trial, Brown moved to prohibit the state's witnesses from using the terms "molest" or "child molestation" during their testimony. The court granted the motion, ruling that witnesses should "be specific as to the alleged event." At trial, psychologist Holmes was asked whether his observations of J. F. were consistent with "sexual abuse." Over defense counsel's objection, Holmes answered in the affirmative.

Brown now argues that the court should have sustained the objection because referring to "sexual abuse" was tantamount to using the term "child molestation." The court, however, forbade mention only of the latter term, not the former. And before offering his expert opinion, Holmes had followed the court's instruction to specifically describe the alleged acts of molestation by detailing what J. F. had told him. We find no violation of the court's in limine order.

5. Finally, Brown argues that the court violated the rule of sequestration by allowing the state to recall White, the GBI investigator, to the stand to testify in rebuttal after he had been present in the courtroom during Brown's testimony. But Brown did not object to White's testimony when he took the stand. Instead, she waited until the evidence was closed to move for a mistrial. The court denied the motion on the ground that Brown had "[sat] on [her] hands" and waived her right to seek a mistrial. Although Brown argues that she objected at the earliest opportunity, we disagree. Her failure to object when the state recalled White constituted a waiver.[11]

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED JUNE 14, 2004.

*Richard H. Stancil*, for appellant.

[10] See *Yim v. State*, 256 Ga. App. 667 (1) (569 SE2d 601) (2002); *Watkins v. State*, 241 Ga. App. 251, 253 (2) (526 SE2d 155) (1999).

[11] See *Yim*, supra.

*N. Stanley Gunter, District Attorney, Kerry I. Banister, Assistant District Attorney*, for appellee.